CURTIS B. AND LAURA L. PERRY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Perry v. Commissioner
Docket No. 12756-92
United States Tax Court
T.C. Memo 1994-247; 1994 Tax Ct. Memo LEXIS 245; 67 T.C.M. (CCH) 3035; May 31, 1994, Filed *245 For petitioners: John R. McCabe. For respondent: Ursula P. Gee and Linette B. Angelastro. COHEN
COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION COHEN, Judge: Respondent determined a deficiency of $ 16,329 in petitioners' Federal income taxes for 1988 and an $ 816.45 addition to tax under section 6653(a). The issues for decision are whether petitioners are entitled to roll over the gain from the sale of a residence; the amount of depreciation that petitioners are entitled to deduct on a mobile home; and whether petitioners are liable for the section 6653(a) negligence addition to tax. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. FINDINGS OF FACT Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. At the time the petition was filed, petitioners resided in Simi Valley, California. Sale of Residence
Curtis B. Perry (petitioner) married Laura A. Perry (Ms. Perry) on January 28, 1973. In 1979, petitioner and Ms. Perry purchased property located in Irvine, California *246 (the Irvine property). Petitioner and Ms. Perry resided together at the Irvine property until June 15, 1984. On that date, in anticipation of a divorce, petitioner moved from the Irvine property to a friend's house. Petitioner took with him some personal belongings, such as clothes, but he left behind tools, heirlooms, and other items that he had acquired before the marriage. Subsequently, in August or September 1984, petitioner moved into the home of Laura L. Perry, his present wife (Mrs. Perry). Although he no longer resided at the Irvine property, petitioner continued to make the monthly mortgage payments directly to the lender until June 1985, at which point petitioner started paying alimony and child support; Ms. Perry then began making the mortgage payments. After the separation, petitioner also paid for the incidental expenses related to the Irvine property including property tax, insurance, and utilities. Starting in the summer of 1985, petitioner and Ms. Perry split the cost of these incidental expenses. Additionally, petitioner made repairs to the Irvine property, as needed, without reimbursement from Ms. Perry. The marriage between petitioner and Ms. Perry was *247 legally terminated on December 17, 1985. In conjunction with the divorce, petitioner and Ms. Perry entered a marital settlement agreement that provided that Ms. Perry had exclusive use of the Irvine property for a 2-year period ending on December 17, 1987. The marital settlement agreement also provided that the Irvine property would be sold as soon as reasonably possible after this 2-year period and that Ms. Perry would have exclusive temporary use of the property pending the sale. The marital settlement agreement provided that petitioner would receive one-half of the proceeds from the sale of the Irvine property. Petitioner married Mrs. Perry on April 18, 1987. In December 1987, the Irvine property was listed for sale. Petitioner and Ms. Perry sold the Irvine property on or about March 15, 1988, for $ 213,000. Petitioners reported $ 106,500 as petitioner's share of the Irvine property sales proceeds and $ 6,342 in sales expenses on Form 2119, Sale of Your Home, on their 1988 income tax return. Petitioners reported no taxable gain from the sale of the Irvine property, indicating on Form 2119 that they intended to purchase a replacement home within the replacement period. On *248 or about August 18, 1989, petitioners purchased a home in Simi Valley, California (the Simi Valley property), for $ 400,032. The Simi Valley property became petitioners' principal residence on August 18, 1989. Mobile Home Depreciation
In 1988, petitioner was self-employed and operated a trucking company, Perry Trucking, as a sole proprietorship. Mrs. Perry maintained the books and records of Perry Trucking, although she was also employed by a contractor as an office manager. Perry Trucking engaged in hauling sand, gravel, and other materials for various companies. Perry Trucking received hauling jobs through a broker, and these jobs sometimes required petitioner to stay overnight because of the distance from petitioner's home and the extent of the work required. On or about November 7, 1988, petitioners purchased a motor home for $ 65,498. Petitioners purchased the mobile home because they anticipated an increase in overnight hauling jobs. In 1988, petitioner used the mobile home for business purposes for two trips that were approximately 75 miles, each way, from petitioner's home. In late November, petitioners used the mobile home for a personal trip that was approximately *249 400 miles round-trip. Petitioners deducted depreciation on the mobile home of $ 9,360 on Schedule C of their 1988 income tax return. OPINION Sale of Residence
Section 1034(a) provides for nonrecognition of gain on the sale of property used by the taxpayer as his principal residence if, within a specified period of time, the taxpayer purchases a new principal residence at a cost that equals or exceeds the adjusted sale price of the old residence. Here, the only issue in dispute with respect to section 1034(a) is whether the Irvine property was petitioner's principal residence when it was sold in 1988. Petitioner contends that the Irvine property qualifies as his principal residence even though he moved out 4 years prior to sale of the property in 1988. The phrase "principal residence" is not defined by the Code; however, section 1.1034-1(c) (3), Income Tax Regs., provides that the determination of whether or not property is used by the taxpayer as his principal residence "depends upon all the facts and circumstances in each case, including the good faith of the taxpayer." Generally, for property to be "used by the taxpayer as his principal residence" within the meaning *250 of section 1034(a), that taxpayer must physically occupy and live in the dwelling. Houlette v. Commissioner, 48 T.C. 350 (1967); Stolk v. Commissioner, 40 T.C. 345 (1963), affd. 326 F.2d 760 (2d Cir. 1964). Whether property constitutes a principal residence depends entirely upon the facts and circumstances in each case, and, based on the facts and circumstances in some cases, certain property has been considered as the principal residence of taxpayers even though the taxpayers were not physically present at the residence at the time of its sale. Bolaris v. Commissioner, 776 F.2d 1428 (9th Cir. 1985), affg. in part and revg. in part 81 T.C. 840 (1983); Clapham v. Commissioner, 63 T.C. 505 (1975). Those cases involved situations where the property was rented instead of sold after the taxpayers moved out because of facts and circumstances over which the taxpayers had no control. For example, in Clapham v. Commissioner, supra, we held that the nonrecognition provisions of *251 section 1034 applied even though the taxpayers had vacated their old residence in 1966, with no intentions of returning, rented the house intermittently, and did not sell it until 1969. There, the taxpayers were moving to another city because of a change in employment location but, due to the "exigencies of the real estate market", were unable to sell their home before their move. Id. at 512. The taxpayers listed the house for sale at the time of their departure, but financial constraints caused the taxpayers to rent intermittently their former home until it was sold in 1969. Recognizing that the determination of whether a property is the principal residence of the taxpayer depends on all of the facts and circumstances in each case, we concluded that nonrecognition was appropriate because the taxpayers' dominant motive was to sell the property at the earliest possible date and that the rental of the property was caused by conditions in the real estate market and was incidental to efforts to sell the property. Id. at 512. Respondent contends that the facts and circumstances here are similar to those in Young v. Commissioner, T.C. Memo. 1985-127, *252 and support respondent's position that the Irvine property was not petitioner's principal residence. In Young, a taxpayer's divorce settlement granted his former wife a 75-percent interest in their Huntington, Connecticut, home (the Huntington residence) and the exclusive right to occupy such home. The divorce decree there also provided that the taxpayer was to pay alimony as well as the mortgage, real estate taxes, and homeowner's insurance. The taxpayer moved from the Huntington residence into an apartment and later into the home of his new wife. Subsequently, the taxpayer conveyed his 25-percent interest in the Huntington residence to his former wife and purchased another home with his new wife. We held that, based on the facts and circumstances there, the Huntington residence was not the taxpayer's principal residence within the meaning of section 1034(a). We stated that, as of the date that the taxpayer moved out of the Huntington residence: the Huntington residence ceased to be petitioner's residence and it became solely his former wife's and daughter's residence. The fact that petitioner paid the mortgage and all fees associated with the Huntington residence *253 and had the right to visit his daughter there cannot be construed to preserve his status as a resident therein. * * * We do not believe that this case presents such unusual facts and circumstances that petitioner can be considered to have retained his residence at the Huntington residence when he had not lived in the house for more than 2 years prior to the purchase of the new home. Petitioner's failure to satisfy the limitations of section 1034(a) cannot alter the inapplicability of the section because the conditions under which the section applies have been circumscribed by Congress and enforced by the courts. Shaw v. Commissioner, 69 T.C. 1034, 1038 (1978). * * * [Young v. Commissioner, supra; fn. ref. omitted.]
Petitioners contend that Young has no bearing here because that case does not discuss whether the taxpayer-husband intended to sell the residence after he left. Petitioners contend that the Irvine property qualifies as petitioner's principal residence because his intent at all times was to sell the property and because the delay in listing the property for sale was caused by external factors. *254 Petitioners maintain that, starting in June 1984 when petitioner's marriage relationship ended, his intent to sell the Irvine property never wavered and that the 2-year delay in listing the property for sale was caused by external factors beyond his control, namely, "a perceived public policy consideration of the family law court". We are not persuaded that the facts and circumstances here warrant an outcome different from that in Young. Petitioner maintains that he considered the Irvine property to be his residence, yet, under the terms of the marital settlement agreement, petitioner did not have the right to reside at the Irvine property. Notwithstanding his intentions or desires of selling the Irvine property as soon as possible, petitioner resided at other locations for a substantial period of time before the Irvine property was even listed for sale. The facts here are distinguishable from the Clapham line of cases where the taxpayers had listed the property for sale upon their departure, and the delayed sale was caused by external factors such as a poor real estate market. As we said in Young, "a divorce, while often unpleasant and unwanted, is uniquely personal *255 and is not the type of external, objective, circumstance that allows a taxpayer not in possession of a home to be deemed a resident therein for purposes of section 1034(a)." Accordingly, we hold that the Irvine property was not petitioner's principal residence when it was sold in 1988 and, thus, that petitioners are not entitled to nonrecognition under section 1034(a). Mobile Home Depreciation
On brief, respondent concedes that petitioners are entitled to deduct $ 1,637.45 in depreciation on the mobile home. Respondent calculated this amount under the alternative depreciation system of section 168(g) (2) using a 5-year recovery period and the mid-quarter convention. Respondent contends that section 168(g) (2) applies here because of the limitations on depreciation contained in section 280F(b)(2) and (4), which relate to listed property with a personal use of more than 50 percent. Respondent contends that the personal usage of the mobile home was 58 percent, which respondent computes by dividing the 400-mile personal trip by 700 miles (400-mile personal trip + 300 miles of business trips). Petitioners concede on brief that their mobile home depreciation deduction must *256 be reduced to account for their personal use of the mobile home. The only issue that remains in dispute is the calculation of the personal usage percentage of the mobile home. Petitioners argue that their personal usage was only 40 percent, which petitioners calculate by dividing the 400-mile personal trip by the 1,000 miles that petitioner testified were the total miles driven in 1988. We agree with respondent's computation of a personal usage of 58 percent. Petitioner testified about specific business and personal trips that totaled 700 miles. Although petitioner also testified that the mobile home was driven "about a thousand miles or so", there is no evidence in the record regarding the remaining 300 miles. As a result, we sustain respondent's calculation of depreciation based on a 58-percent personal usage. Section 6653(a)
Section 6653(a)(1) provides that, if any part of any underpayment of tax is due to negligence or intentional disregard of the rules or regulations, there shall be added to the tax an amount equal to 5 percent of the underpayment. Negligence, as used in section 6653(a), is defined as the "lack of due care or failure to do what a reasonable and *257 ordinarily prudent person would do under the circumstances." Neely v. Commissioner, 85 T.C. 934, 947 (1985) (quoting Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967)). Petitioners have the burden of proof that they were not negligent. Allen v. Commissioner, 925 F.2d 348, 353 (9th Cir. 1991), affg. 92 T.C. 1 (1989). Petitioners contend that they should not be held liable for the negligence addition to tax because they do not have a specialized background in tax or accounting. Petitioner testified that he knew "that if you didn't reinvest your money from a sale of a home within two years, that you could pay penalties on that money." Thus, petitioner had some understanding of the provisions of section 1034. Moreover, petitioner testified that he and Mrs. Perry retained the services of a professional to prepare their 1988 income tax return. Petitioners do not, however, contend that they relied on the preparer, and there is no evidence that information regarding the occupancy of the residence or use of the mobile home was disclosed to the return preparer. *258 Cf. Ewing v. Commissioner, 91 T.C. 396, 423-424 (1988), affd. without published opinion 940 F.2d 1534 (9th Cir. 1991). Whether or not petitioner was negligent in claiming an exclusion under section 1034, the addition to tax under section 6653(a) applies if any part of an underpayment is due to negligence. With respect to the mobile home depreciation, petitioners contend that their failure to account for their personal use was an oversight and does not constitute negligence because the other deductions claimed on Schedule C were accepted as filed. This argument is illogical and not persuasive. The presence of correct deductions on a tax return does not negate negligence with respect to erroneous ones. Petitioners are liable for the section 6653(a) addition to tax. Decision will be entered under Rule 155.