T.C. Memo. 1996-393


UNITED STATES TAX COURT


SHERBURNE M. EDMONDSON, JR. AND DIANE L. EDMONDSON, Petitioners
v. COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 22405-93.                          Filed August 22, 1996.


Sherburne M. Edmondson, Jr., and Diane L. Edmondson, pro
sese.

Matthew R. Kretzer, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


JACOBS, Judge:  Respondent determined a $9,629 deficiency in petitioners' 1988 Federal income tax, and additions to tax pursuant to sections 6651(a)(1), 6653(a), and 6661 in the respective amounts of $1,802, $653, and $2,407. Pursuant to an amended answer,

respondent increased the deficiency to $19,269, and the additions to tax pursuant to sections 6651(a)(1), 6653(a), and 6661 to $4,212, $1,135, and $4,817, respectively.

Respondent and Sherburne M. Edmondson, Jr. (Mr. Edmondson), entered into a Stipulation of Settled Issues (the settlement stipulation) resolving all items in dispute except whether Diane L. Edmondson (Ms. Edmondson), Mr. Edmondson's ex-wife, qualifies for tax relief as an innocent spouse pursuant to section 6013(e). Ms. Edmondson did not contest any of the compromised items, which would have resulted in a deficiency in tax, including additions to tax, being assessed jointly against her and Mr. Edmondson (but for innocent spouse relief), but she refused to sign the settlement stipulation because she felt "uncomfortable" doing so. In response to the Court's inquiry, respondent's counsel agreed that should the Court deny innocent spouse relief to Ms. Edmondson, respondent would seek against her only the amount of taxes and additions to tax computed under the settlement stipulation signed by Mr. Edmondson and respondent.

In general, respondent's determinations are presumed correct. Thus, except for a matter pleaded in respondent's amended answer (discussed below), Ms. Edmondson bears the burden of proving respondent's determinations erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Since Ms. Edmondson failed to introduce any evidence with regard to any item in dispute, respondent's determinations with respect to those items where Ms.

Edmondson bears the burden of proof are sustained. Thus, the principal issue to be resolved is whether Diane L. Edmondson qualifies for tax relief as an innocent spouse.

We also must consider an issue raised by respondent's amended answer, even though the matter was covered by the settlement stipulation. The issue so presented is whether gain from the sale of a house in Seattle, Washington, which was owned by Mr. Edmondson and his first wife, qualifies for deferred recognition pursuant to section 1034.

All section references are to the Internal Revenue Code for the year in issue; all Rule references are to the Tax Court Rules of Practice and Procedure.

## FINDINGS OF FACT

### Background

At the time they filed their petition, Sherburne M. Edmondson, Jr., and Diane L. Edmondson (hereinafter sometimes referred to as the Edmondsons) resided in Sunnyvale, California. Ms. Edmondson (hereinafter referred to as petitioner) filed an amendment to petition on April 12, 1995, asserting that she is an innocent spouse. Petitioner and Mr. Edmondson untimely filed their 1988 joint Federal income tax return on February 11, 1991.

### The Edmondsons' Marriage

Petitioner and Mr. Edmondson met in Seattle in 1981. The next year they married. At that time, petitioner was 21 years old, and Mr. Edmondson was approximately 10 years older. Mr. Edmondson

has a medical technology degree and worked in the research department of the University of Washington, performing medical research on cardiovascular disease. Petitioner failed to complete high school and was not employed at that time. Both petitioner and Mr. Edmondson had children from previous marriages.

Shortly after they married, the Edmondsons moved to San Diego. Mr. Edmondson began working at Scripps Clinic and Research Foundation. In 1983, he acquired Glass Onion Records, a San Diego record store.[1] Petitioner worked in the store but was not paid. The business failed sometime before 1988.

During the year in issue, petitioner attended the Fashion Institute of Design and Merchandising, where she took an accounting course.

Mr. Edmondson provided all monetary support for the family, and was responsible for the household finances and payment of all expenses. Although Mr. Edmondson did not hide any assets or income from petitioner, petitioner did not attempt to ascertain the details of their finances. The Edmondsons maintained joint bank accounts. Toward the end of their marriage, petitioner maintained a separate bank account.

Throughout their marriage, the Edmondsons' lifestyle was modest. They did, however, fly to Mexico during the year in issue

---

[1] Petitioner believes that she owned Glass Onion Records jointly with Mr. Edmondson.

to explore the possibility of investing in an import/export business.

On February 11, 1991, Mr. Edmondson asked petitioner to sign a joint 1988 tax return. She signed the return voluntarily, without any force or threat from Mr. Edmondson. Because she trusted Mr. Edmondson to prepare the return correctly, she signed the return without reviewing it. Indeed, throughout petitioner's marriage to Mr. Edmondson, she consistently signed joint tax returns without reviewing them.

In April 1992, petitioner and Mr. Edmondson separated. Mr. Edmondson agreed to give petitioner $500 a month for 36 months and took responsibility to repay one of her two student loans. The Edmondsons divorced in November 1993.

On October 25, 1994, Mr. Edmondson signed a notarized document (an indemnity), whereby he agreed to be solely responsible for the payment of all taxes incurred during his marriage with petitioner.

Seattle House

Prior to marrying petitioner, Mr. Edmondson owned a house in Seattle with his first wife.[2] Mr. Edmondson lived in the house through 1981. Thereafter, the house was rented until its sale on July 29, 1988. The sale resulted in a $30,948.64 gain to Mr. Edmondson. The proceeds from the sale were used to pay the Edmondsons' living expenses as well as debts of their failed record

---

[2]    Petitioner was aware that Mr. Edmondson had owned the Seattle house.

business. Neither petitioner nor Mr. Edmondson purchased a house within 2 years after the date of sale.

Floyd Avenue House

Sometime in 1988, Mr. Edmondson entered into an oral "equity share" agreement with Wieland and Helen Emery von Behrens (friends of the Edmondsons). Pursuant to that agreement, the von Behrenses purchased a house at 1393 Floyd Avenue, in Sunnyvale, California (the Floyd Avenue house). The von Behrenses held title to the house, and were the only borrowers on a deed of trust. Mr. Edmondson agreed to renovate the house in exchange for an eventual equity interest in the property.[3] This arrangement was made because Mr. Edmondson could not qualify for a mortgage. Petitioner, Mr. Edmondson, and their respective children lived in the house during the year in issue.

Petitioner's Present Circumstances

At the time of trial, petitioner supported herself and her daughter, working as an administrative assistant for a semiconductor firm. She earned approximately $35,000 a year, and paid yearly tuition of $5,000 for her daughter to attend private school. Petitioner also attended night school.

The Edmondsons' 1988 Federal Income Tax Return

The Edmondsons reported an adjusted gross income of $37,611.70 on their 1988 Federal income tax return. Two Schedules C were

---

[3] There is no additional evidence in the record regarding this arrangement.

attached to the return, one listing petitioner as the proprietor of Glass Onion Records ("Businesswoman, Retail Sales, Marketing"), and the other listing Mr. Edmondson as proprietor of S.M.E. Contracting Co.[4] ("General Contractor"). On the Schedule C relating to Glass Onion Records, $18,188.01 of expenses was claimed; among other things, the expenses were with respect to: Debts of Glass Onion Records prior to its failure; a 1988 trip to Mexico; and petitioner's education. On the Schedule C relating to S.M.E. Contracting Co., $19,406.13 of expenses was claimed; among other things, the expenses were with respect to renovations to the Floyd Avenue house.

Attached to the Edmondsons' 1988 return was a Form 2119 (Sale of Principal Residence), wherein $30,948.64 of gain from the sale of Mr. Edmondson's Seattle house was deferred.

Notice of Deficiency and Amended Answer

Respondent disallowed all deductions claimed on the two Schedules C on the basis that the Edmondsons failed to establish that the expenses were deductible under section 162(a). In the amended answer, respondent asserted that the deferral of the $30,948.64 gain from the sale of Mr. Edmondson's Seattle house was erroneous.

---

[4] Except for the 1988 tax return, there is no evidence in the record with regard to S.M.E. Contracting Co.

OPINION

Issue 1.  Innocent Spouse

Spouses who file a joint income tax return generally are jointly and severally liable for its accuracy and the tax due, including any additional taxes, interest, or penalties determined on audit of the return.  Sec. 6013(d)(3); Ness v. Commissioner, 954 F.2d 1495, 1497 (9th Cir. 1992), revg. 94 T.C. 784 (1990); Guth v. Commissioner, 897 F.2d 441, 442 (9th Cir. 1990), affg. T.C. Memo. 1987-522; Price v. Commissioner, 887 F.2d 959, 961 n.3 (9th Cir. 1989), revg. an Oral Opinion of this Court.  However, pursuant to section 6013(e), a spouse (commonly referred to as an innocent spouse) can be relieved of tax liability if that spouse proves: (1) A joint return was filed; (2) the return contained a substantial understatement of tax attributable to grossly erroneous items of the other spouse; (3) in signing the return, the spouse seeking relief did not know, and had no reason to know, of the substantial understatement; and (4) it would be inequitable to hold the spouse seeking relief liable for the understatement.  Sec. 6013(e)(1); Guth v. Commissioner, supra at 443; Price v. Commissioner, supra at 961-962.  The spouse seeking relief bears the burden of proving that each of the four section 6013(e) requirements has been satisfied.  Purcell v. Commissioner, 826 F.2d 470, 473 (6th Cir. 1987), affg. 86 T.C. 228 (1986). Failure to meet any one of the statutory requirements will disqualify an individual from innocent

spouse relief.  Bokum v. Commissioner, 94 T.C. 126, 138-139 (1990), affd. 992 F.2d 1132 (11th Cir. 1993).

In the case before us, respondent concedes that the Edmondsons filed a 1988 joint income tax return and that a substantial understatement of tax exists.  As a result, the controversy herein focuses on the aforementioned second, third, and fourth requirements, namely:  Whether the substantial understatement was attributable to Mr. Edmondson's grossly erroneous items; whether petitioner did not know, and had no reason to know, of the substantial understatement; and whether it would be inequitable to hold petitioner liable for the income tax deficiency attributable to such substantial understatement.

A.  Grossly Erroneous Items of the Other Spouse

The phrase "grossly erroneous items" statutorily is defined to mean with respect to any spouse (a) any item of gross income attributable to that spouse which is omitted from gross income, and (b) any claim of a deduction, credit, or basis by that spouse in an

amount for which there is no basis in fact or law.[5]   Sec. 6013(e)(2).

To prove that the disallowed deductions have no basis in fact or law, an individual seeking innocent spouse status is not entitled to rely on the Commissioner's disallowance of deductions contained in the notice of deficiency, without introducing further evidence to establish that a deduction has no basis in fact or law.  Douglas v. Commissioner, 86 T.C. 758, 762-763 (1986).

Petitioner presented no evidence to show that the items disallowed by respondent  were grossly erroneous or that the deduction claimed for those items had no basis in fact or law.  See, e.g., Douglas v. Commissioner, supra; Neary v. Commissioner, T.C. Memo. 1985-261.

Further, the items disallowed were not solely attributable to Mr. Edmondson.  Some relate primarily to Glass Onion Records, a business in which petitioner participated with Mr. Edmondson.

---

[5]    The phrase "no basis in fact or law," is not defined in sec. 6013.  The courts, however, have held that a deduction has no basis in fact when the expense for which the deduction is claimed was never made, and a deduction has no basis in law when the expense, even if made, does not qualify as a deductible expense under well-settled legal principles or when no substantial legal argument can be made to support its deductibility.  Ness v. Commissioner, 954 F.2d 1495, 1498 (9th Cir. 1992), revg. 94 T.C. 784 (1990); Douglas v. Commissioner, 86 T.C. 758, 762 (1986).  "Ordinarily, a deduction having no basis in fact or in law can be described as frivolous, fraudulent, or, * * * phony."  Douglas v. Commissioner, supra at 763.  A portion of a deduction may be "grossly erroneous" even if another portion of the same deduction is allowed.  Ness v. Commissioner, supra at 1498-1499.

Moreover, some of the disallowed items are attributable to petitioner.

We have observed that respondent's agreement to a compromise settlement may suggest that the deductions claimed on a return were less than grossly erroneous. See, e.g., Crowley v. Commissioner, T.C. Memo. 1993-503; Anthony v. Commissioner, T.C. Memo. 1992-133; Neary v. Commissioner, supra. Here, respondent agreed in the settlement stipulation to allow a portion of the Edmondsons' 1988 Schedule C deductions. Further, respondent conceded the inapplicability of the section 6653(a)(1) addition to tax, and although the settlement stipulation denies the deferral of gain on the sale of the Seattle house in its entirety, we do not believe the mischaracterization of this item constitutes a grossly erroneous item within the purview of section 6013(e)(2). See Winnett v. Commissioner, 96 T.C. 802, 810-811 (1991). Thus, we reject petitioner's argument that the substantial understatement of tax was attributable solely to Mr. Edmondson's grossly erroneous items.

Petitioner did not satisfy this second requirement.

B. Knowledge of the Substantial Understatement

Assuming however, arguendo, that petitioner satisfied the second requirement, she still is not entitled to innocent spouse status because she failed to prove that she did not know, and had no reason to know, of the substantial understatement of tax.

Whether a spouse knew or had reason to know of a substantial understatement depends on whether "a reasonably prudent taxpayer

under the circumstances of the spouse [here, petitioner] at the time of signing the return could be expected to know that the tax liability stated was erroneous or that further investigation was warranted." Stevens v. Commissioner, 872 F.2d 1499, 1505 (11th Cir. 1989), affg. T.C. Memo. 1988-63; see Bokum v. Commissioner, 94 T.C. at 148; Griner v. Commissioner, T.C. Memo. 1990-301, affd. without published opinion 951 F.2d 360 (9th Cir. 1991).

The test for constructive knowledge of an understatement is a subjective one, focusing on the following factors:  (1) The spouse's level of education; (2) the spouse's involvement in the business and financial affairs of the marriage and in the transactions that gave rise to the understatement; (3) the presence of expenditures that appear lavish or unusual when compared to the taxpayers' accustomed standard of living and spending patterns; and (4) the culpable spouse's evasiveness and deceit concerning family finances. Price v. Commissioner, 887 F.2d at 965.

Petitioner had little knowledge of financial matters and was only tangentially involved in family finances. However, Mr. Edmondson did not hide any assets or transactions from her; petitioner refused to inquire into the details of the family's finances and income taxes.  She neither reviewed the 1988 return, took any steps to verify the accuracy of its contents, nor made any inquiries about it. A taxpayer cannot simply turn a blind eye to what is disclosed on the tax return.  The innocent spouse provision is "designed to protect the innocent, not the intentionally

ignorant." <u>Cohen v. Commissioner</u>, T.C. Memo. 1987-537. Had petitioner reviewed the return, she would have seen that it clearly disclosed the deductions on the Schedules C and the deferment of gain on Form 2119.[6] Nearly half the deductions related to Glass Onion Records, a business in which she participated. These items were of such magnitude compared to the Edmondsons' income that a reasonable person of petitioner's educational level and background would have been put on notice that further inquiry should have been made. See <u>Stevens v. Commissioner</u>, <u>supra</u> at 1507; <u>Bokum v. Commissioner</u>, 94 T.C. at 148. Moreover, petitioner went on the Mexican trip for which a deduction was taken. Thus, petitioner knew or had reason to know of the substantial understatement on the return. She therefore has not satisfied the third requirement (lack of knowledge).

### C. Inequity of Holding Petitioner Liable

Again assuming, arguendo, that petitioner had satisfied the knowledge requirement, she still is not entitled to innocent spouse status because she failed to prove that it would be inequitable to hold her liable (the fourth requirement). This factor focuses on whether petitioner benefited from the understatement of tax. <u>Purcell v. Commissioner</u>, 86 T.C. at 242. "Normal support" is not considered a significant benefit. <u>Terzian v. Commissioner</u>, 72 T.C. 1164, 1170-

---

[6] The Form 2119 lists the $30,948.64 of deferred gain. Petitioner was aware that Mr. Edmondson had sold the Seattle house, and indeed she signed the Form 2119 on which the sale was reported.

1171 (1979). Petitioner bears the burden of proving that she received no significant benefit from the understatement other than normal support, and this burden must be satisfied with specific facts regarding lifestyle, expenditures, asset acquisitions, and the disposition of the benefits of the understatement. See Estate of Krock v. Commissioner, 93 T.C. 672 (1989).

It is also relevant to consider whether the spouse claiming relief has been deserted, divorced, or separated. Kistner v. Commissioner, T.C. Memo. 1995-66; sec. 1.6013-5(b), Income Tax Regs. We also examine the probable future hardships that would be imposed on the spouse seeking relief, if such relief were denied. Sanders v. United States, 509 F.2d 162, 171 (5th Cir. 1975).

While petitioner's standard of living did not increase in 1988 in comparison to prior years, the Edmondsons continued living together from 1988 until 1992. Thus, they shared equally in the tax savings generated by the understatement. In this regard, part of the disallowed deductions (from which tax savings were derived) related to: A failed business that both Mr. Edmondson and petitioner operated; the Floyd Avenue house in which they both lived; and a Mexican trip that benefited petitioner as well as Mr. Edmondson.

The proceeds from the gain on the sale of the Seattle house went to pay living expenses for the entire Edmondson household, as well as the debts of the failed business. Moreover, Mr. Edmondson gave petitioner $500 a month for 36 months following the end of

their marriage. In addition, Mr. Edmondson signed an indemnity promising to pay all tax liabilities resulting from the filing of their joint tax returns. The effect of such a promise has been considered by this Court on several occasions with regard to granting innocent spouse relief. See, e.g., Foley v. Commissioner, T.C. Memo. 1995-16; Buchine v. Commissioner, T.C. Memo. 1992-36, affd. 20 F.3d 173 (5th Cir. 1994); Henninger v. Commissioner, T.C. Memo. 1991-574.

Considering all the facts and circumstance involved herein, we conclude that it would not be inequitable to hold petitioner liable for the determined understatement.

In sum, we hold that petitioner is not entitled to innocent spouse relief. She has failed to prove: That the substantial understatement was attributable to Mr. Edmondson's grossly erroneous items; that she did not know or have reason to know of the substantial understatement; or that it would be inequitable to hold her liable for the deficiency as determined in the settlement stipulation.

Issue 2. Section 1034 Deferral

A taxpayer must include in gross income gains derived from dealings in property. Sec. 61(a)(3). A taxpayer is generally required to recognize the entire amount of gain or loss realized on the sale or exchange of property. With respect to gain realized on

the sale of a principal residence,[7] section 1034(a) provides the following exception to that general rule:

> If property (in this section called "old residence") used by the taxpayer as his principal residence is sold by him, and, within a period beginning 2 years before the date of such sale and ending 2 years after such date, property (in this section called "new residence") is purchased and used by the taxpayer as his principal residence, gain (if any) from such sale shall be recognized only to the extent that the taxpayer's adjusted sales price (as defined in subsection (b)) of the old residence exceeds the taxpayer's cost of purchasing the new residence.[8]

Mr. Edmondson converted the Seattle house (old residence) to a rental property in 1982 and never lived in it again.[9]  Although

_____

[7]    The Internal Revenue Code does not define the phrase "principal residence".  Nevertheless, sec. 1.1034-1(c)(3), Income Tax Regs., provides that the determination of whether or not property is used by the taxpayer as his principal residence "depends upon all the facts and circumstances in each case, including the good faith of the taxpayer."  For property to be "used by the taxpayer as his principal residence" within the meaning of sec. 1034(a), the taxpayer ordinarily must physically occupy and live in the dwelling.  Perry v. Commissioner, ___ F.3d ___ (9th Cir., July 31, 1996), affg. T.C. Memo. 1994-247; Houlette v. Commissioner, 48 T.C. 350 (1967); Stolk v. Commissioner, 40 T.C. 345 (1963), affd. 326 F.2d 760 (2d Cir. 1964).  Certain property has been considered as the principal residence of taxpayers despite the fact that the taxpayers were not living there at the time of its sale, e.g., where adverse economic conditions required the taxpayers to lease the old residence while trying to sell it.  Bolaris v. Commissioner, 776 F.2d 1428, 1431 (9th Cir. 1985), affg. in part and revg. in part 81 T.C. 840 (1983); Clapham v. Commissioner, 63 T.C. 505, 509-512 (1975).

[8]    Any gain that is not recognized under sec. 1034 reduces the taxpayer's basis in the "new residence".  Sec. 1034(e).

[9]    We note that petitioner never lived in the Seattle
                                        (continued...)

the "temporary" rental of an old residence prior to its sale does not preclude the nonrecognition of gain realized on the sale of the old home, here the old residence ceased to be Mr. Edmondson's principal residence well before it was sold in 1988. See Perry v. Commissioner, ___ F.3d ___ (9th Cir., July 31, 1996), affg. T.C. Memo. 1994-247; Clapham v. Commissioner, 63 T.C. 505, 511-512 (1975) (the definition of "temporary" depends on the facts and circumstances of each case).

Moreover, the Edmondsons never purchased a new principal residence. Mr. Edmondson entered into an oral agreement intended to give him some type of an interest in the Floyd Avenue house. The exact details of such arrangement are not clear from the record. What is clear, however, is that the Edmondsons never purchased the Floyd Avenue house; the von Behrenses did. See Marcello v. Commissioner, 380 F.2d 499, 502 (5th Cir. 1967) ("If a third party owns the residence, the purchase requirements are not met"), affg. on this issue and remanding T.C. Memo. 1968-268.

Based on the record before us, we conclude that Mr. Edmondson did not purchase a new principal residence within the period beginning 2 years before and ending 2 years after the sale of the Seattle house. Thus, we sustain respondent's position that the gain on the Seattle house does not qualify for deferred recognition pursuant to section 1034.

---

[9](...continued)
house.

To reflect concessions made by respondent in the settlement stipulation,

<u>Decision will be entered</u>

<u>under Rule 155</u>.
