**Hulda V. GUMMER, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 97–297 T.**

United States Court of Federal Claims.

April 30, 1998.

Richard D. Silvester, Concord, CA, for plaintiff.

Charles M. Ruchelman, Washington, DC, with whom were Assistant Attorney General Loretta C. Argrett and Chief, Court of Federal Claims Section Mildred L. Seidman, for defendant.

**ORDER**

MOODY R. TIDWELL, III, Judge.

This case is before the court on defendant's motion for judgment on the pleadings and plaintiff's cross-motion for judgment on the pleadings, both filed pursuant to Rule 12(c) of the Rules of the Court of Federal Claims ("RCFC"). At issue in this tax refund suit is whether plaintiff qualifies for an exclusion of gain from gross income for the sale of her residence under section 121 of the Internal Revenue Code ("IRC"). 26 U.S.C.

121 (1994). For the reasons set forth below, the court denies both motions. Oral argument is not deemed necessary.

## BACKGROUND [1]

Plaintiff, Hulda V. Gummer, owned and resided in a home in Santa Rosa, California (hereinafter "the Santa Rosa residence") for approximately 22 years prior to her relocating to a rented apartment in Reno, Nevada on or about October 1, 1990. The Santa Rosa residence had been listed for sale on or about March 1, 1990, approximately seven months prior to plaintiff's relocation to Reno. Plaintiff alleges that a subsequent decline in the local real estate market conditions frustrated efforts to sell the house despite plaintiffs and her real estate agent's best efforts to find a buyer. Plaintiff eventually sold the Santa Rosa residence on June 24, 1994, for $420,000. The depressed real estate market allegedly caused numerous reductions in the original $690,000 list price for the residence. Plaintiff alleges that she was over 55 years of age at the time of sale and otherwise eligible to exclude recognition of $125,000 of the gain from the sale of the Santa Rosa residence under IRC section 121.

Plaintiff alleges that she physically occupied the Santa Rosa residence for approximately one year, six months and five days during the five year period proceeding the date the house was sold.[2] On the advice of her realtor that a well-maintained, lived-in house is easier to show than a vacant house, plaintiff had her adult grandchildren reside in the house for approximately one and one-half years while the house was on the market. In addition, plaintiff kept a substantial amount of her furniture in the house to maintain a "lived in" appearance. Plaintiff alleges that while the house was listed, she continuously believed that a sale was "imminent."

Defendant does not dispute that plaintiff reported $211,098 of gain on the sale of the Santa Rosa residence on her original 1994 federal individual income tax return. Subsequently, plaintiff filed a 1994 amended federal return in which she claimed the $125,000 exclusion in her calculation of recognized taxable gain from the sale of the house pursuant to IRC section 121. Utilization of the exclusion, if permitted, would have allowed plaintiff a tax refund of $35,659. Plaintiff's claim for refund, however, was denied by the Internal Revenue Service on February 20, 1996.

Plaintiff filed a complaint in this court on April 24, 1997, claiming a tax refund of $35,659, along with costs and interest. Defendant subsequently filed a motion for judgment on the pleadings, alleging that plaintiff's limited physical occupancy of the Santa Rosa residence during the five years prior to its sale precludes the availability of an IRC section 121 exclusion. Plaintiff cross-moved for judgment on the pleadings, asserting that section 121's adoption of IRC section 1034's definition of "principal residence," requiring an examination of the "facts and circumstances" of each case, entitles her to the section 121 exclusion under the facts as stated. For the reasons set forth below, the court denies both defendant's motion for judgment on the record and plaintiff's cross-motion for judgment on the record.

## DISCUSSION

### I. Judgment on the Pleadings

The parties have cross-moved for judgment on the pleadings under RCFC 12(c), which provides:

> After the pleadings are closed, but within such time as not to delay the trial, any

---

1. Unless otherwise noted, defendant in its answer and subsequent motion did not admit or deny the facts set forth below. Instead, defendant asserted in its motion for judgment on the pleadings that it has no knowledge as to the truth of such facts, but that in assuming that they are true, defendant is entitled to judgment as to this set of facts as a matter of law. Defendant further asserted, however, that "[i]f the instant motion were to be denied ... the United States reserves the right to dispute such facts." (Def.'s Mot. for

J. on the Pleadings and Br. in Supp. Thereof at 5 n. 3.)

2. Defendant noted that its calculation of plaintiff's physical occupancy of the Santa Rosa residence differs from that of plaintiff, but that the difference is immaterial for purposes of this motion because both parties agree that plaintiff physically occupied the residence for less than three out of the five years preceding its sale.

party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

RCFC 12(c). On a motion for judgment on the pleadings, the court assumes that all of the nonmovant's allegations are true, and indulges all reasonable inferences in favor of the nonmoving party. *See Atlas Corp. v. United States*, 895 F.2d 745, 749 (Fed.Cir. 1990) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Owen v. United States*, 851 F.2d 1404, 1407 (Fed.Cir.1988)). A motion for judgment on the pleadings should only be granted where "it appears to a certainty that [the nonmoving party] is entitled to no relief under any state of facts which could be proved in support of his claim," *Branning v. United States*, 215 Ct.Cl. 949, 950, 1977 WL 9606 (1977) (citations omitted), and therefore the moving party is entitled to judgment as a matter of law. When the parties have filed cross-motions for judgment on the pleadings, as in this case, the court evaluates each party's motion on its own merits.

## II. Defendant's Motion for Judgment on the Pleadings

### A. "Use" as a "Principal Residence" Under Internal Revenue Code Section 121

All gain or loss on the sale or exchange of property must be recognized in gross income unless otherwise provided by the IRC. 26 U.S.C. § 1001(c) (1994). As stated above, plaintiff originally listed all gain from the sale of the Santa Rosa residence on her 1994 tax return. Plaintiff, however, subsequently filed an amended return in which she claimed a tax refund of $35,659, pursuant to IRC section 121. Section 121 provides an exception to the general recognition rule of section 1001(c):

> At the election of the taxpayer, gross income does not include gain from the sale or exchange of property if—(1) the taxpayer has attained the age of 55 before the date of such sale or exchange, and (2) during the 5-year period ending on the date of the sale or exchange, such property has been owned and used by the taxpayer as his principal residence for periods aggregating 3 years or more.

26 U.S.C. § 121(a) (1994).[3] The amount of gain excluded cannot exceed $125,000, and the exclusion can only be used once in a lifetime. 26 U.S.C. § 121(b)(1)–(2) (1994).

Subsequent to the IRS's denial of plaintiff's claim for a tax refund, plaintiff filed her complaint in this court. In its present motion, defendant contends that it is entitled to judgment on the pleadings because plaintiff did not meet an alleged requirement of section 121, namely that she did not physically occupy the Santa Rosa residence for three out of the five years prior to the date of its sale. Defendant avers in its motion that section 121 sets forth four requirements which must be satisfied to qualify for the exclusion, including: (1) that before the date of sale the taxpayer must have attained the age of 55; (2) that for at least three out of the five years prior to the date of sale, the property must have been owned by the taxpayer; (3) that for at least three out of the five years prior to the date of sale the property must have been used by the taxpayer; and (4) that the property that was sold must have been the taxpayer's principal residence. Defendant states that even assuming that plaintiff satisfied the first, second and fourth[4] requirements, plaintiff admits that

---

**3.** The court is applying section 121 from the 1994 code because plaintiff's claim for a tax refund arises from her 1994 tax return. The court is aware, however, that this code section, along with 26 U.S.C. § 1034 (1994), was subsequently replaced in 1997 by an entirely rewritten section 121, which allows a limited exclusion (which can be claimed as frequently as every two years) of home-sale gains from gross income if the taxpayer satisfies certain requirements for duration of use and ownership. *See* 26 U.S.C.A. § 121 (West 1998).

**4.** Defendant states in its motion that it "takes issue" with plaintiff's claim that the Santa Rosa residence was her "principal residence." (Def.'s Mot. for J. on the Pleadings at 8 n. 5.)

she did not satisfy the third requirement of "use" which allegedly requires physical occupancy of the property for at least three out of the five years prior to the date of sale, and therefore she is not eligible for the section 121 exclusion.

Plaintiff contends that the "use as a principal residence" language in the statute does not create two separate tests, but instead is a term in itself. Therefore, plaintiff argues, the "use" requirement is tied to the definition of "principal residence," and whether the property was physically occupied by the owner becomes only part of the analysis.

In support of its argument, defendant cites the legislative history of section 121 and the Treasury Regulations, which interpret "ownership and use" under the statute:

> [i]n establishing whether a taxpayer has satisfied the requirement of [three] years of use, short temporary absences such as for vacation or other seasonal absence (although accompanied with rental of the residence) are counted as periods of use.[5]

*See* H.R. REP. No. 88–749, at A36 (1963), *reprinted in* 1964 U.S.C.C.A.N. 1313, 1462; Treas. Reg. 1.121–1(c) (1994). Plaintiff argues, however, that the same Treasury Regulations for section 121 also state that "[t]he term 'principal residence' has the same meaning as in section 1034 (relating to sale or exchange of residence) and the regulations thereunder (see paragraph (c)(3) of [section] 1.1034–1)." Treas. Reg. 1.121–3(a) (1994). Section 1034 of the Internal Revenue Code, like section 121, is an exception to the general recognition rule of section 1001(c), and provides that when a taxpayer sells his (old) principal residence and purchases a(new) substitute residence within a period beginning two years before and ending two years after the sale of the old residence, gain is recognized only to the extent the adjusted sales price of the old residence exceeds the taxpayer's cost of purchasing the new residence. 26 U.S.C. § 1034(a) (1994). The

Treasury Regulations interpreting section 1034 explain the meaning of property used as a principal residence within section 1034:

> Whether or not property is used by the taxpayer as his residence, and whether or not property is used by the taxpayer as his principal residence (in the case of a taxpayer using more than one property as a residence), *depends upon all the facts and circumstances in each case,* including the good faith of the taxpayer.

Treas. Reg. 1. 1034–1(c)(3)(i) (1994) (emphasis added). Legislative history promulgated pursuant to an amendment to section 121 acknowledged that the term "principal residence" under the statute is to be interpreted in accordance with section 1034's "facts and circumstances" test. *See* H.R. REP. No. 95–1445, at 135 (1978), *reprinted in* 1978 U.S.C.C.A.N. 7044, 7161; S. REP. No. 95–1263, at 197 (1978), *reprinted in* 1978 U.S.C.C.A.N. 6761, 6960.

Cases interpreting whether property is "used" as a "principal residence" under section 1034 do not always require strict physical occupancy, but rather analyze whether the facts and circumstances surrounding any absence still entitle the party to a finding that the old property was used as a principal residence. For example, in *Clapham v. Commissioner,* 63 T.C. 505, 511–12, 1975 WL 3146 (1975), the court allowed the taxpayers to claim the benefits of section 1034 even though they were physically absent from, and even rented out, the property during the requisite time period, because the facts and circumstances demonstrated that such actions were due to the taxpayer's good faith difficulty in selling the property as a result of certain exigencies in the local real estate market. Therefore, under section 1034's "facts and circumstances" analysis, physical occupancy is not always necessary to find that a taxpayer "used" the property as the principal residence. No cases, however, have similarly analyzed whether section 121 re-

---

**5.** The court recognizes that the original statute required that the property be owned and used as the taxpayer's principal residence for five out of eight, rather than three out of five, years preceding the sale. The statute's requirements changed in 1978 to require the three out of five years, and plaintiff is subject to the three out of five year requirement. For the purposes of clarity, the court has substituted the three out of five years for five out of eight years when citing or referring to legislative history that was promulgated when the requirement was still the five out of eight years.

quires strict physical occupancy, or whether 1034's "facts and circumstances" test, and the cases interpreting it, should be applied in the context of a section 121 case.[6]

The primary issue at this juncture of the case, therefore, is whether to adopt defendant's argument that section 121's requirement of "use" of the property mandates strict physical occupancy for at least three out of the five years before the house is sold, regardless of the facts and circumstances surrounding whether the property constituted the "principal residence" for that period of time. The court's adoption of defendant's analysis would allow defendant to prevail on its motion for judgment on the pleadings as a result of plaintiff's admission that she was physically absent from the property for more than two out of the five years. On the other hand, plaintiff's characterization would require that defendant's present motion be denied because the court would need additional facts to perform a "facts and circumstances" analysis. Plaintiff's characterization of "use" as intertwined with the term "principal residence," in light of section 121's adoption of section 1034's definition of an (old) "principal residence,"[7] allows an inquiry into the facts and circumstances surrounding plaintiff's extended physical absence, including her allegation that the depressed real estate market prevented her from selling the property. Whether plaintiff's present motion would be sustained depends upon whether any facts

admitted to by defendant would allow plaintiff to prevail at this juncture.

### 1. "Use" as a "Principal Residence" Depends Upon the Facts and Circumstances

■ After careful consideration of the parties' arguments as to how the court should construe section 121's statutory language of "use" and "principal residence," the court is persuaded by plaintiff's characterization of the terms "use" and "principal residence" as interdependent terms. When interpreting the tax laws, the court is mindful that "exemptions from taxation are to be construed narrowly." *Bingler v. Johnson*, 394 U.S. 741, 751–52, 89 S.Ct. 1439, 1445, 22 L.Ed.2d 695 (1969) (citations omitted). The first step in statutory interpretation is to examine the plain language of the statute. *See United States v. Ron Pair Enters.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989) (citation omitted). A plain reading of the statute indicates that the three out of five year requirement refers not to how the residence was merely "used," but to whether the property was "used by the taxpayer as his principal residence...." *See* 26 U.S.C. § 121(a) (1994) (requiring two elements to be met, of which the second element includes "use" as a "principal residence" for three out of the five years preceding the sale of the residence).

■ In addition, a logical reading of the statute in accordance with the statute's pur-

---

**6.** In *Green v. Commissioner*, 64 T.C.M. (CCH) 369, 1992 WL 182343 (1992), a taxpayer claimed the benefits of both sections 121 and 1034 for the sale of a home in which she had not physically occupied for various reasons for at least four years before its sale, but had bought a new home ten months after the old residence was sold. The court allowed the taxpayer to claim benefits under section 1034, but denied her claim for benefits under section 121 because when the taxpayer had originally moved out of the old residence, she had not reached the age of 55, which is a requirement under section 121. *Id.* at 373. Therefore, the court did not reach the issue of whether a "facts and circumstances" test should be applied to determine whether the taxpayer "used" the property as her "principal residence" even though she did not physically occupy it for the requisite time. *Id.*

**7.** As a preliminary matter, defendant argues that plaintiff "selectively relied" on section 1034's

definition of an "old" principal residence, rather than the definition of a "new" principal residence, in order to advance its "facts and circumstances" argument. Defendant contends that if the court were to apply section 1034's definition of a "new" principal residence (i.e., the residence which the taxpayer subsequently purchases), physical occupancy would be required. The court, however, notes that in referring to section 1034's definition of "principal residence" in the section 121 Treasury Regulations, it is clear that those regulations intended the adoption of the analysis under the "old" principal residence definition, as the "old" principal residence would be the subject of the sale, as would be the principal residence in section 121. *See* Treas. Reg. 1.1034–1(b)(1) (1994) (stating that "old residence" under section 1034 "means property used by the taxpayer as his principal residence which is the subject of a sale ...")

pose compels a conjunctive analysis of whether the property was "used" as a "principal residence." *See Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 608, 99 S.Ct. 1905, 1911, 60 L.Ed.2d 508 (1979) (stating that a court's task is to interpret the words of a statute in light of the purposes Congress sought to serve). In enacting section 121 in 1964, Congress noted that the then existing law under section 1034 required individuals, when selling their principal residence, to tie up their investment from the old residence in a new residence in order to avoid taxation on any of the resulting gain. *See* H.R. REP. No. 88–749, at 45 (1963), *reprinted in* 1964 U.S.C.C.A.N. 1313, 1354; S. REP. NO. 88–830, pt. 1, at 51 (1964), *reprinted in* 1964 U.S.C.C.A.N. 1673, 1723. Section 1034, therefore, was adequate for younger individuals who changed residences, but was inadequate for elderly taxpayers who no longer needed a large family homestead and who might wish to purchase a less expensive home, move to an apartment or rental property, or even use some or all of the funds for living expenses. *Id.* In requiring "use" of the property as a "principal residence" for three out of the five years preceding the sale of the house, Congress logically intended to ensure that the benefit of section 121 would be provided only to those who sold their *principal residence* and wished to invest the gain from such sale in something else. In other words, if the property is not *used* for three out of the five years before the sale, it would not be the principal residence. As a preliminary matter, then, defendant's attempt to bifurcate the terms "use" and "principal residence," presumably to avoid the court's adoption of a facts and circumstances analysis from the definition of "principal residence" in the section 1034 Treasury Regulations, is illogical and unsupported by the plain language of the statute. Therefore, the court will read the terms "use" and "principal residence" together.

In addition to adopting plaintiff's conjunctive reading of "use" and "principal residence," the court similarly agrees with plaintiff that a "facts and circumstances" analysis should be undertaken to determine whether the property was used as a principal residence for the requisite time period. Defendant's assertion that the "short temporary absence" language interpreting the use and ownership requirements indicates the necessity of strict physical occupancy ignores the same regulations and legislative history that direct that the term "used" as a "principal residence" should be interpreted in accordance with section 1034's "facts and circumstances" analysis. In addition, it would clearly defy Congress's purpose to apply a strict physical occupancy requirement rather than inquiring about the reasons for a party's physical absence. Depending upon the situation, an individual who does not physically occupy the residence for the requisite period may have extenuating circumstances which prevent physical presence but do not deny the characterization of "use" of the property as a "principal residence" for the requisite time under the statute and its legislative history. After an absence from the residence is explained under a "facts and circumstances" test, the court may or may not find that the party "used" the property as their "principal residence" for the requisite time.

In its motion, defendant cites examples from the Treasury Regulations and legislative history which expound upon the "use" as a "principal residence" requirement in support of its argument that "use" under section 121 always requires physical occupancy for the requisite period. For example, defendant cites Treasury Regulation 1.121–1(d), Example 2, in which for more than two years before the sale of the house which the taxpayer owned, the taxpayer did not live in the house but rather leased it to a tenant. Treas. Reg. 1. 121–1(d). Ex. (2) (1994). The example states that pursuant to the 3 out of 5 year requirement, the taxpayer did not use the property for the requisite period of time. *Id.* Defendant also cites Treasury Regulation 1.121–1(d), Example 4, which was lifted and modified from an example in the section 121 legislative history, in which a college professor, after living in the house that he owned for less than the requisite period under section 121, went abroad for a one-year sabbatical leave. Treas. Reg. 1.121–1(d), Ex. (4) (1994); *see also* H.R. REP. No. 88–749, at A37, Ex. (3) (1963), *reprinted in* 1964 U.S.C.C.A.N. 1313, 1462 (including a

similar example, but based upon the five out of eight (rather than the three out of five) year requirement and based upon different dates). The house was unoccupied for a portion of the year, and leased for the remainder of the year. Treas. Reg. 1.121–1(d), Ex. (4) (1994). One month after his return, the professor sold the house. *Id.* The example states that because the one-year sabbatical leave was not a short, temporary absence, the one-year period would not be considered for purposes of determining whether the professor satisfied the requirement of the time of use. *Id.* Finally, defendant cites a Treasury Regulation example, also lifted from and modified by an example in the legislative history, in which a taxpayer lived in his residence for approximately fourteen years. Treas. Reg. 1.121–1(d), Ex. (1) (1994); *see also* H.R. REP. No. 88–749, at A36, Ex. (1) (1963), *reprinted in* 1964 U.S.C.C.A.N. 1313, 1462 (including a similar example, but based upon the five out of eight (rather than the three out of five) year requirement and based upon different dates). The taxpayer then moved from his home, and leased the home for approximately twenty-one months before it was sold. Treas. Reg. 1.121–1(d), Ex. (1) (1994). The example states that the taxpayer may recover because although the house was leased for twenty-one months before it was sold, the taxpayer had owned and used the house as his principal residence for the three out of five years preceding the sale. *Id.* Defendant cited this example to support his argument that the time after a taxpayer physically leaves the home is to be subtracted from the total five years in order to determine whether a taxpayer has "used" the property for the requisite time.

Defendant contends that if plaintiff's argument that physical occupancy is unnecessary is accepted by this court, then the legislative history containing these examples would be ignored and Treasury Regulation 1.121–1(d), containing the examples, would have to be invalidated. The court wholly disagrees with defendant on this point. While the above examples are contained in both the legislative history to section 121 and in the implementing regulations, the same legislative history and regulations require that in determining whether property is "used" as a "principal residence," the facts and circumstances of the situation should be taken into account. Therefore, in the above examples, the court's analysis would not change in light of the facts and circumstances provided. The above examples present clearcut cases in which the facts and circumstances indicate that the property was not "used" as a "principal residence" for the requisite period. The court's adoption of the "facts and circumstances" test is in no way adverse to these examples.

Defendant has also cited portions of the legislative history related to a 1978 amendment to section 121 as authority that the language "used" in section 121 requires actual physical occupancy by the taxpayer to determine whether the benefits of section 121 may be accorded. The legislative history of the 1978 amendment indicates that the reason for the amendment was to alter the numerical age, dollar, and period of use requirements of the statute, and it provided no indication that the amendment intended to clarify the meaning of the terms "use" or "principal residence." *See* H.R. REP. No. 95–1445, at 134 (1978), *reprinted in* 1978 U.S.C.C.A.N. 7044, 7160 (stating that "the current dollar limits and age restriction are unrealistic in view of increased housing costs and lower retirement ages"); *accord* S. REP. No. 95–1263, at 196, *reprinted in* 1978 U.S.C.C.A.N. 6761, 6959. Defendant cites the legislative history of the 1978 amendment, which variously speaks in terms of "use" and/or "occupancy," in the context of whether the property is "used" as the "principal residence" for the requisite time, rather than simply "use" as occurred in the original legislative history to section 121. *See, e.g.,* H.R. REP. No. 95–1445, at 135 (1978), *reprinted in* 1978 U.S.C.C.A.N. 7044, 7161 (using the phrase "owned and occupied"); H.R. CONF. REP. No. 95–1806, at 259–60 (1978), reprinted in 1978 U.S.C.C.A.N. 7198, 7256–57 (using the phrases "actual use and occupancy" and "owned and occupied"). The legislative history to the amendment did not, however, expressly indicate that Congress intended a change under section 121 to require actual *physical occupancy,* and the court does not view the use of the word "oc-

cupancy" in the legislative history as changing how the statutory language should be construed. Notably, Congress did not amend the statutory language to reflect any change in the section 121 requirements to require physical occupancy.

Defendant also contends that actual physical occupancy must be required under the "use" requirement of section 121 because any other interpretation would render superfluous subsection 121(d)(9), which provides a "special rule" for individuals who have become physically or mentally incapable of self-care and are residing in a nursing home or similar facility. 26 U.S.C. § 121(d)(9) (1994). Specifically, subsection § 121(d)(9) allows a taxpayer to be treated as using the property as the taxpayer's principal residence during the time spent in the nursing home, as long as the taxpayer used the residence as the principal residence for periods aggregating at least one year during the five year period preceding the sale of the home. *Id.* The court disagrees with defendant's argument that subsection 121(d)(9) would be nonessential if physical occupancy is not required under the use requirement for section 121. Spelling out the "special rule" in subsection 121(d)(9) merely ensures a result that may or may not occur under a "facts and circumstances" analysis. In conjunction with the court's analysis above, defendant's advancement of subsection 121(d)(9) in support of its argument that "use" always requires physical occupancy is unconvincing.

Finally, defendant argues that the differing focus of section 121 on the duration of use, as compared to section 1034's focus on use at a particular time. reveals that section 121 requires physical occupancy of the property for the requisite period. Suction 1034, defendant argues, merely requires that at the time of sale, the residence that was sold was used as the taxpayer's principal residence. Section 121, on the other hand, requires that the taxpayer own and use the property as its principal residence for a period aggregating three years out of the five year period preceding the sale of the principal residence. Therefore, defendant argues, section 121's focus on the "aggregation" of use indicates the necessity of physical occu-

pancy for the requisite period. The court however, disagrees that the focus on duration of use indicates that physical occupancy is necessary. In fact, depending upon the facts and circumstances, a finding of "use" of the property as the "principal residence" for a period of time could result even if the taxpayer were not physically present at the home during that time.

The court has considered all of defendant's arguments in support of its position that the term "use" in section 121 requires physical occupancy and should be analyzed separately from the court's analysis of whether the property constituted the taxpayer's "principal residence." For the foregoing reasons, the court finds as a matter of law that whether the property is "used" as a "principal residence" for the requisite three out of five years pursuant to IRC section 121 does not depend solely on physical occupancy and instead will be determined under a "facts and circumstances" analysis. The court notes that the analysis will focus upon all facts and circumstances, including the taxpayer's good faith, surrounding whether the property was "used" as the taxpayer's "principal residence" for the purposes of section 121. As stated above, a motion for judgment on the pleadings can only be granted where "it appears to a certainty that [the nonmoving party] is entitled to no relief under any state of facts which could be proved in support of his claim," *Branning*, 215 Ct.Cl. at 950 (citations omitted), and therefore the moving party is entitled to judgment as a matter of law. Defendant would be entitled to judgment on the pleadings only if actual physical occupancy of the residence for three out of the five years preceding the sale was required under section 121. As a result of the court's adoption of the "facts and circumstances" test rather than defendant's physical occupancy requirement, defendant's motion for judgment on the pleadings is denied.

## III. Plaintiff's Cross–Motion for Judgment on the Pleadings

In addition, plaintiff's motion for judgment on the pleadings is denied because sufficient facts have not been developed to enable the court to determine whether the "facts and

circumstances" surrounding plaintiff's absence from the property would entitle her to claim the benefits of section 121. Because defendant has denied or has no knowledge as to many of plaintiff's allegations in its complaint, the court, at this juncture. cannot make a determination as to whether plaintiff or defendant, under the "facts and circumstances" test, will prevail.

## CONCLUSION

For the foregoing reasons, both defendant's motion for judgment on the pleadings and plaintiff's cross-motion for judgment on the pleadings are denied. The parties shall contact the court within 15 days to schedule a status conference on how to proceed.

**IT IS SO ORDERED.**