DOROTHY LOUISE GREEN, Petitioner, v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Green v. Commissioner
Docket No. 20556-90
United States Tax Court
T.C. Memo 1992-439; 1992 Tax Ct. Memo LEXIS 457; 64 T.C.M. (CCH) 369; August 3, 1992, Filed As Corrected August 17, 1992. *457 Decision will be entered under Rule 155. Petitioner and another purchased a residence in Los Angeles in 1975. In 1979, petitioner moved to Baltimore, Maryland. Until 1982, she returned frequently to Los Angeles. In 1982, she moved out of the Los Angeles residence permanently. Petitioner attempted to sell the residence in 1982, but the joint owner refused to sell. Petitioner began legal proceedings for partition, which were not completed until 1986. Petitioner sold the residence in 1986. 1. Held: Petitioner need not recognize gain on the sale of her interest in the old residence except to the extent that the adjusted sales price of her interest in the old residence exceeds the cost of her new residence. Sec. 1034, I.R.C.
2. Held, further, petitioner is ineligible to exclude gain on sale of the residence under sec. 121, I.R.C.
3. Held, further, petitioner is liable for additions to tax under secs. 6653(a)(1)(A) and (B) and 6661, I.R.C.
For Dorothy Louise Green, pro se. For Respondent: Alan R. Peregoy. HALPERN
HALPERN
MEMORANDUM OPINION HALPERN, Judge: Respondent determined a deficiency in petitioner's Federal income tax and additions to tax as follows: *458 Additions to Tax
Year
Deficiency
Sec. 6653(a)(1)(A)
Sec. 6653(a)(1)(B)
Sec. 6661
1986
$ 23,979
$ 1,199
[1]
$ 5,995
Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the taxable year at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. After a concession by respondent, [1] the issues for decision are: (1) Whether certain gain from the sale of property may be excluded from gross income by petitioner pursuant to section 121; (2) whether all or a portion of such gain is not recognized to petitioner pursuant to section 1034; (3) whether petitioner is liable for additions to tax for negligence pursuant to section 6653(a)(1)(A) and (B); and (4) whether petitioner is liable for an addition to tax for substantial understatement pursuant to section 6661. *459 Background
Some facts have been stipulated and are so found. The stipulation of facts filed by the parties and accompanying exhibits are incorporated herein by this reference. At the time of filing her petition, petitioner resided in Baltimore, Maryland. In 1975, petitioner and her boyfriend, Warren Hollier (Hollier), purchased a house and lot in Los Angeles, California (the Los Angeles residence). [2] The purchase price was $ 75,000. A down payment of $ 16,000 was made, of which $ 12,000 was paid by petitioner and $ 4,000 by Hollier. Payment of the remainder of the purchase price was secured by two deeds of trust. By agreement, Hollier was to pay the first trust deed note and petitioner was to pay the second; taxes and insurance were to be shared. From July 1975 to December 1979, petitioner and Hollier resided together in the Los Angeles residence. *460 By December 1979, petitioner's relationship with Hollier had become strained. Petitioner, a Social Security Administration (SSA) employee, moved to Baltimore, renting an apartment there, but leaving furniture and other belongings in the Los Angeles residence. Hollier did not move. Within 2 months of arriving in Baltimore, petitioner asked the SSA to transfer her back to Los Angeles. The SSA would not do so. From 1980 to mid-1982, petitioner returned to Los Angeles and stayed at the Los Angeles residence periodically for periods ranging from 2 weeks to 2 months. She continued to vote and pay taxes in California. She made all mortgage, tax, and insurance payments for the Los Angeles residence, as Hollier would not do so. Petitioner moved her remaining belongings from the Los Angeles residence in June 1982. In August 1982, Hollier married again and moved his wife and her child into the Los Angeles residence. Hollier agreed to a sale of the Los Angeles residence, and petitioner listed it with a real estate agent in September 1982. Nevertheless, when a potential buyer was found shortly thereafter, Hollier changed his mind and blocked the sale by refusing to show the house. *461 Petitioner began legal action for a partition and an accounting in the Superior Court of California, County of Los Angeles (the Superior Court). In October 1983, the Superior Court ordered Hollier to make payments on the first trust deed note. Petitioner treated Hollier's payments as rental income on her income tax returns and deducted depreciation and other rental-related expenses. Petitioner did so in her 1983 through 1986 tax returns, in each year claiming a net loss. In July 1986, the Superior Court ordered a partition of the Los Angeles residence, and Hollier bought petitioner's interest in the property for $ 262,500, pursuant to a right of first refusal granted him by the court. Petitioner did not report any gain from the sale of the Los Angeles residence on her 1986 return. In April 1987, petitioner purchased a house in Baltimore, Maryland (the Baltimore residence), for $ 135,000. During 1987 and 1988, petitioner made various improvements to the Baltimore residence. Petitioner was born on November 7, 1930. Discussion
Petitioner sold her interest in the Los Angeles residence in 1986, realizing a substantial gain, but reporting none of it in her 1986 Federal income *462 tax return. Petitioner argues that a portion of the gain was excludable from gross income pursuant to section 121 and the remainder was subject to nonrecognition pursuant to section 1034. Respondent argues that neither section is applicable because the Los Angeles residence was not petitioner's principal residence in 1986, at the time of the sale. We agree with respondent that section 121 is inapplicable. We agree with petitioner that the nonrecognition rule of section 1034 applies, although we disagree with petitioner that all of the gain realized by her on the sale of the Los Angeles residence qualifies for nonrecognition pursuant to that rule. [3] We sustain respondent's additions to tax. Section 1034 Exclusion
In pertinent part section 1034 provides: (a) Nonrecognition of gain. -- If property (in this section called "old residence") used by the taxpayer as his principal residence is sold by *463 him and, within a period beginning 2 years before the date of such sale and ending 2 years after such date, property (in this section called "new residence") is purchased and used by the taxpayer as his principal residence, gain (if any) from such sale shall be recognized only to the extent that the taxpayer's adjusted sales price (as defined in subsection (b)) of the old residence exceeds the taxpayer's cost of purchasing the new residence. The regulations accompanying section 1034 provide that use as a principal residence is determined based on all the facts and circumstances in each case, including the good faith of the taxpayer. Sec. 1.1034-1(c)(3)(i), Income Tax Regs. Petitioner sold her interest in the Los Angeles residence in December 1986 and purchased the Baltimore residence in April 1987. The Baltimore residence was used by petitioner as her principal residence. It is clear that the purchase of the Baltimore residence occurred within 2 years of the sale by petitioner of her interest in the Los Angeles residence. The question is whether, given the facts and circumstances here established, the Los Angeles residence was "used" by petitioner as her "principal residence", *464 as those terms are used in section 1034, so that some or all of the gain realized to petitioner on the sale of her interest in the Los Angeles residence is subject to nonrecognition pursuant to that section. Respondent argues that petitioner abandoned the Los Angeles residence as her principal residence no later than June 1982 and at such time established a new principal residence in Baltimore. Thus, respondent argues, the Los Angeles residence was not her principal residence at the time of the sale of her interest therein. Respondent cites Biltmore Homes, Inc. v. Commissioner, 288 F.2d 336, 342 (4th Cir. 1961), affg. T.C. Memo. 1960-53, Stolk v. Commissioner, 40 T.C. 345 (1963), affd. per curiam 326 F.2d 760 (2d Cir. 1964), and Houlette v. Commissioner, 48 T.C. 350 (1967), in support of her position. Before addressing the authority cited by respondent, we wish to dispose of one point. The parties agree that the Los Angeles residence was petitioner's principal residence until she moved to Baltimore in December 1979. With regard to the period from December 1979 until June 1982 (when petitioner *465 removed the remainder of her belongings from the Los Angeles residence), respondent's position is uncertain. Respondent has requested findings of fact that, no later than June 1982, petitioner left the Los Angeles residence with no intent to return to it and established a new principal residence in Baltimore. We conclude that petitioner's absence from the Los Angeles residence from December 1979 until June 1982 was only temporary; she intended to return. We so conclude because of, among other factors, the circumstances of her leaving in 1979 (viz, the deterioration of her relationship with Hollier), her immediate request for a transfer back to Los Angeles from Baltimore, and her periodic, extended visits to Los Angeles, during which she stayed in the Los Angeles residence. We conclude that her absence became more than temporary in June 1982 when (we assume) she learned of Hollier's impending marriage and removed the remainder of her belongings from the Los Angeles residence. During the period of her temporary absence from the Los Angeles residence, from December 1979 until June 1982, that absence did not change the status of the Los Angeles residence as her principal residence. *466 Cf. Trisko v. Commissioner, 29 T.C. 515, 518-520 (1957); Andrews v. Commissioner, T.C. Memo. 1981-247, affd. without published opinion 685 F.2d 429 (4th Cir. 1982); Barry v. Commissioner, T.C. Memo. 1971-179. We now turn to petitioner's removal from the Los Angeles residence in June 1982. All three of the cases cited by respondent ( Biltmore Homes, Inc. v. Commissioner, supra, Stolk v. Commissioner, supra, and Houlette v. Commissioner, supra) concern a taxpayer who leaves a residence, rents a home elsewhere for a period of time (in Houlette the taxpayer lived in military quarters provided for him), eventually sells the old residence, and purchases a new one. In each case, section 1034 was found inapplicable. The common denominator is that, in each case, following the taxpayer's removal from the residence, the court concluded that the taxpayer no longer intended to use the residence as a principal residence. The consequence was that, upon the eventual sale of the residence, it could not qualify as the taxpayer's "old residence" *467 within the meaning of section 1034(a). In Stolk and Houlette, we expressed the results of our analyses of the facts in terms of the conclusion that, in each case, the taxpayer had "abandoned" the property in question as his principal residence when he moved out. Stolk v. Commissioner, supra at 353; Houlette v. Commissioner, supra at 358. We do not reach the same conclusion here. Biltmore Homes, Inc. v. Commissioner, supra, Houlette v. Commissioner, supra, and Stolk v. Commissioner, supra, are distinguishable. When petitioner removed the remainder of her belongings from the Los Angeles residence in June 1982, she intended to sell her interest immediately. That was not the case in either Biltmore Homes or Stolk. Petitioner listed the property with a real estate agent and expressed no reservations about selling the Los Angeles residence once a buyer was found. Nevertheless, petitioner was prevented from selling the Los Angeles residence because of Hollier's refusal to sell his interest and later because of the partition proceedings in California *468 State court. The taxpayers in Houlette also intended to sell as soon as they moved out, and attempted to do so. When initial sales efforts failed, however, the taxpayers leased the residence on five separate occasions over nearly 6 years. The first and last leases were for 2-year periods; none of the leases included options to buy, and sales efforts were confined to periods between leases. Because of the taxpayers' apparent intention not to occupy the house again, we concluded that such efforts evidenced a business purpose, and they had abandoned the property as a principal residence. Houlette v. Commissioner, supra at 356. We find Clapham v. Commissioner, 63 T.C. 505 (1975), to be closer to the instant facts. In Clapham, the taxpayers moved and immediately listed their home for sale with a broker. Due to a slow real estate market, they received no immediate offer. Eventually, financial circumstances forced them to accept an offer to lease with an option to purchase. When the lessee moved out without exercising the option, the taxpayers resumed efforts to sell and, except for one more short rental, left the house vacant *469 to facilitate sale. The taxpayers eventually succeeded in selling their home 3 years after they had moved out. In Clapham, we stated the following: Under the facts and circumstances before us we do not believe the failure of petitioners to occupy their home or the absence of an intention to return is of any significance. They vacated their old residence with no intention of returning, wishing only to sell the property as soon as a reasonable offer could be obtained. When a reasonable offer was not forthcoming, financial circumstances required them to rent the property temporarily pending sale, although their primary wish was always to sell. [Fn. ref. omitted.] Clapham v. Commissioner, supra at 510. We further stated that: "There is nothing in the legislative history [of section 1034] to indicate * * * [that the] clearly expressed remedial purpose [of the section] is inapplicable when a poor real estate market or the unavailability of mortgage money requires an individual to lease his old premises for a temporary period concurrent with and ancillary to sales efforts." Id. at 511. We concluded that, under the facts and circumstances *470 of the case, the taxpayers were entitled to the benefits of section 1034. Id. at 512. In Clapham, where the taxpayers' intent not to return was clear, we considered the lack of a ready market to be a fact or circumstances to be taken into account in determining whether the property there in question remained the taxpayers' principal residence after they moved out. Respondent would distinguish Clapham by denying that petitioner faced anything other than a ready market. On brief, respondent concedes that petitioner's intentions were to sell her interest in the Los Angeles residence as soon as she could. Nevertheless, respondent argues that: The litigation in the California court was litigation she [petitioner] instituted over a personal relationship and a joint venture property ownership arrangement that was entered into of her own accord. Circumstances of an individual's own making and under the control of the individual are not the type of "market exigencies" addressed by the Court in Clapham. We take respondent's argument to be that, in 1982, there was nothing unusual about the market for houses similar to the Los Angeles residence, viz, *471 that such market was not depressed, nor was there a dearth of buyers. Although there is no evidence to that effect, we will accept that was so. Nevertheless, petitioner did not have ready access to that market. Hollier's possession and refusal to cooperate in selling the house effectively blocked petitioner's access to the market. To be sure, petitioner could have sold her interest in the Los Angeles residence at some price, but undoubtedly that also was true of the taxpayers in Clapham. There is a similarity between the situation of petitioner here and the taxpayers in Clapham. In Clapham, the taxpayers had no market in which to sell their house. In this case, petitioner could not gain access to the market. The existence of a bar to her selling her interest in the Los Angeles residence is a circumstance that we take into account in determining whether the Los Angeles residence remained petitioner's principal residence after she moved out with no intent to return. See Clapham v. Commissioner, supra.
Respondent also argues that petitioner's deduction of rental losses and depreciation from 1983 to 1986 indicates that petitioner no longer *472 considered the property her principal residence, but an investment. In the instant case, petitioner did not rent the property in a conventional sense. She reported as rental income the payments that, pending resolution of the action for partition, Hollier was ordered by the Superior Court to make on the mortgage, insurance, and taxes. She then claimed depreciation deductions and other rental expenses, which produced the net loss she claimed on her returns. Petitioner's tax treatment of the property may have been motivated by reasons of tax avoidance. Nevertheless, respondent's emphasis on the rental deductions is misplaced. The regulations state: "The mere fact that property is, or has been, rented is not determinative that such property is not used by the taxpayer as his principal residence." Sec. 1.1034-1(c)(3)(i), Income Tax Regs. Petitioner's efforts to sell the Los Angeles residence and the commencement of partition proceedings by her demonstrate that her dominant motive was to sell that property at the earliest possible date rather than to hold it for rental income. We do not consider her rental treatment of the Los Angeles residence for tax purposes determinative that, *473 in 1983, when she first so treated it, it ceased to qualify as her personal residence. See Clapham v. Commissioner, supra at 512. In light of the facts and circumstances here present, and based on the holding of Clapham v. Commissioner, supra, we conclude that the Los Angeles residence remained petitioner's principal residence at all times here relevant and that, accordingly, petitioner is entitled to the benefits of section 1034. Section 121 Exclusion
Section 121 provides a special one-time exclusion of gain realized on the sale of a principal residence. In pertinent part, section 121 provides: (a) General Rule. -- At the election of the taxpayer, gross income does not include gain from the sale or exchange of property if -- (1) the taxpayer has attained the age of 55 before the date of such sale or exchange, and (2) during the 5-year period ending on the date of the sale or exchange, such property has been owned and used by the taxpayer as his principal residence for periods aggregating 3 years or more. Section 1.121-3(a), Income Tax Regs., states that the "term 'principal residence' has the same meaning as in section *474 1034 * * * and the regulations thereunder (see paragraph (c)(3) of § 1.1034-1)." As previously stated, section 1.1034-1(c)(3)(i), Income Tax Regs., provides that use as a principal residence is determined based on all the facts and circumstances in each case. With regard to the application of section 1034, we have concluded that the existence of a bar to petitioner's selling her interest in the Los Angeles residence was "a circumstance that we [would] take into account in determining whether the Los Angeles residence remained petitioner's principal residence after she moved out with no intent to return." See supra p. 12 (emphasis added). Implicit in our analysis is the assumption that section 1034 would have been available to petitioner had she sold her interest in the Los Angeles residence (and otherwise complied with the requirements of section 1034) in June 1982, when she moved out of the Los Angeles residence with no intention to return. In contradistinction, had petitioner sold her interest in the Los Angeles residence in June 1982, section 121 would not have been available to petitioner, because she had not then attained the age of 55. See sec. 121(a); *475 sec. 1.121-1(c), Income Tax Regs. Accordingly, the bar to her selling her interest in the Los Angeles residence, which was a circumstance that we took into account for purposes of determining whether the Los Angeles residence remained her old residence for purposes of section 1034, after she moved with no intention to return, is not a circumstance that we may here take into account for purposes of section 121, since no sale by her of her interest in the Los Angeles residence at the time she so moved could have qualified for relief under section 121. Accordingly, we conclude that the gain-exclusion rule of section 121 is unavailable to petitioner. We need not determine whether, under different facts and circumstances, the rule of Clapham v. Commissioner, 63 T.C. 505 (1975), would be applicable for purposes of section 121. Section 6653(a)(1)(A) and (B)
Respondent determined that petitioner is liable for additions to tax under section 6653(a)(1)(A) and (B). Section 6653(a)(1) provides for a two-part addition to tax if any part of the underpayment is due to negligence or disregard of the rules or regulations (both hereinafter referred to as negligence). *476 Negligence has been defined as a lack of due care or the failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Crocker v. Commissioner, 92 T.C. 899, 916 (1989); Neely v. Commissioner, 85 T.C. 934, 947-948 (1985). Section 6653(a)(1)(A) imposes an addition to tax equal to 5 percent of the underpayment. Section 6653(a)(1)(B) imposes an addition to tax equal to 50 percent of the interest payable under section 6601 on that portion of the underpayment attributable to negligence. Petitioner bears the burden of proof. Rule 142(a). Petitioner reported no gain from the sale of her interest in the Los Angeles property in her return for 1986. She argues that she failed to report any gain because she thought that she was entitled to the benefits of sections 121 and 1034. That may be. We do not disbelieve that, prior to filing her 1986 return, petitioner became aware of the beneficial tax treatment of home sales provided in sections 121 and 1034. Nevertheless, petitioner has not convinced us that she had more than a vague understanding that some relief was available under some circumstances. She has not *477 convinced us that she took any steps to determine whether such relief was applicable to her particular circumstances, or whether some or all of the gain realized to her would be sheltered from tax. Section 121 requires an election by the taxpayer. Petitioner made no attempt until the trial of this case to comply with the requirement of that election. Based on the record as a whole, we conclude that petitioner has not carried her burden of showing that she exercised due care or acted as a reasonable and ordinarily prudent person would under the circumstances. Accordingly, we sustain respondent's addition to tax for negligence under section 6653(a)(1)(A) and (B), with whatever adjustment is necessary on account of our redetermination of the deficiency. Section 6661
Respondent also determined that petitioner substantially understated her income tax liability and is liable for the addition to tax provided for in section 6661. The addition to tax for a substantial understatement of income tax for a taxable year equals 25 percent of the amount of any underpayment attributable to such substantial understatement. Sec. 6661(a); Pallottini v. Commissioner, 90 T.C. 498, 500-503 (1988). *478 There is a substantial understatement of income tax for a taxable year if the amount of the understatement for the taxable year exceeds the greater of 10 percent of the tax required to be shown on the return or $ 5,000. Sec. 6661(b)(1)(A). As with section 6653(a), petitioner has the burden of proof. Nevertheless, she has submitted no evidence nor any argument as to why section 6661 should not apply. Accordingly, we sustain respondent's determination of an addition to tax for a substantial understatement to the extent that the redetermined deficiency continues to qualify as a substantial understatement under section 6661(b)(1)(A). Decision will be entered under Rule 155. Footnotes
1. 50 percent of the interest due on the portion of the underpayment attributable to negligence.↩
1. Respondent conceded that charitable cash contributions in the amount of $ 1,333 are deductible.↩
2. The grant deed by which the residence was acquired shows petitioner as the sole grantee. The California Superior Court, County of Los Angeles (whose actions are discussed below), found that petitioner and Hollier jointly purchased the Los Angeles residence and that title was taken solely in petitioner's name because Hollier was married at the time. We accept those findings.↩
3. Computation of the amount of gain to be recognized to petitioner will be left to the parties. See Rule 155.↩