**Curtis B. PERRY; Laura L. Perry, Petitioners–Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.**

No. 94–70817.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 9, 1996.

Decided July 31, 1996.

---

John R. McCabe, Fullerton, California, for petitioners-appellants.

Gary R. Allen and Janet A. Bradley, United States Department of Justice, Washington, DC, for respondent-appellee.

Before: HALL, O'SCANNLAIN and KLEINFELD, Circuit Judges.

CYNTHIA HOLCOMB HALL, Circuit Judge:

We are asked to consider the application of I.R.C. section 1034 to property relinquished in a divorce settlement. The tax court determined that a taxpayer could not defer recog-

nition of gain from the sale of his former marital residence. The taxpayer had vacated the property permanently, intending never to return, pursuant to a divorce settlement which gave his former wife an exclusive right of occupancy. We have jurisdiction under 26 U.S.C. § 7482, and affirm.

# I

Petitioner Curtis B. Perry lived with his former wife for five years in their Irvine, California house. The marriage faltered and Curtis Perry moved out of the house on June 15, 1984. He continued to pay the mortgage and other household expenses, but would never again reside at the Irvine address. In August or September 1984, he moved into the house of the current Mrs. Perry in La Mirada, California. He lived there without interruption until 1989.

Curtis Perry and his former wife divorced in December 1985. Their divorce settlement gave the former Mrs. Perry and a minor daughter exclusive use of the Irvine house until December 1987, and provided that they would share equally the burden of taxes and insurance. The house was to be sold as soon as reasonably possible after December 1987, when Curtis Perry and his former wife would split the proceeds of sale between them in equal parts.

In April 1987, Curtis married his current wife, Laura L. Perry, who is also a petitioner in this matter.

In December 1987 the Irvine house was listed for sale. It sold in March 1988 for $213,000. As stipulated in the divorce settlement, Curtis and the former Mrs. Perry each recovered one half the proceeds of sale.

Curtis and the current Mrs. Perry filed jointly for 1988. On their return, they reported a $106,500 receipt from the sale of the Irvine house. They subtracted $6,342 in sales expenses and $50,000 in basis. This

left $50,158 in profit, but they reported no taxable gain. Instead, the Perrys sought to take advantage of the nonrecognition treatment afforded in I.R.C. section 1034.[1] This provision allows a taxpayer to postpone (or "rollover") the recognition of gain from the sale of his principal residence if he purchases a new residence within a prescribed time period. See 26 C.F.R. § 1.1034–1(a) (1988) (describing operation of § 1034).

Later in 1989, the current Mrs. Perry sold the house in which she and Curtis had been living together. According to counsel at oral argument, the Perrys sought to roll over the proceeds of this sale when they jointly filed their return for 1989. In August 1989, the couple bought a new house in Simi Valley for $400,032 and it immediately became their principal residence.

This case arose when the IRS refused to allow section 1034 treatment for the sale of the Irvine house. It determined that the $50,158 gain was taxable in 1988, because the Irvine property had by then ceased to be Curtis Perry's principal residence. The Commissioner also imposed a negligence penalty pursuant to I.R.C. section 6653(a); this statutory provision permits the imposition of a penalty when any part of an underpayment is due to the taxpayer's negligence. On petition for review, the Tax Court upheld the Commissioner's determination. The Perrys timely appealed to this court.

# II

The sole question on appeal is whether Curtis Perry was entitled to call the Irvine property his "principal residence" for the purposes of section 1034, after he turned the house over to his former wife pursuant to their divorce settlement. Neither the statute nor the accompanying regulations settle the matter. Instead, we are directed to examine "all the facts and circumstances" of the case,

---

1. Title 26 U.S.C. § 1034 (1988) provides, in pertinent part:

**Rollover of gain on sale of principle residence**
 **(a) Nonrecognition of gain.**—If property (in this section called 'old residence') used by the taxpayer as his principal residence is sold by him and, within a period beginning 2 years before the date of such sale and ending 2 years

after such date, property (in this section called 'new residence') is purchased and used by the taxpayer as his principal residence, gain (if any) from such sale shall be recognized only to the extent that the taxpayer's adjusted sales price (as defined in subsection (b)) of the old residence exceeds the taxpayer's cost of purchasing the new residence.

"including the good faith of the taxpayer." 26 C.F.R. § 1.1034–1(c)(3)(i) (1988).

 The elements of residence are "abode and the intention of remaining." *Stolk v. Commissioner*, 40 T.C. 345, 353, 1963 WL 1601 (1963), *aff'd*, 326 F.2d 760 (2d Cir. 1964). Both of these must in general be present. "Neither bodily presence alone nor intention alone will suffice to create a residence." *Id.* While literal definitions of "home" are elusive, here it is enough to agree with our sister circuit that a residence is "one's actual home, in the sense of having no other home, whether [one] intends to reside there permanently or for a definite or indefinite length of time." *Dwyer v. Matson*, 163 F.2d 299, 302 (10th Cir.1947).

 Curtis Perry had long since ceased to reside at the Irvine address when that property was sold, indicating to us that his true home was then with his new fiancee in La Mirada, where he had been living since 1984. "Generally, for property to be 'used by the taxpayer as his principal residence' within the meaning of section 1034(a), that taxpayer must physically occupy and live in the house." *Young v. Commissioner*, 49 T.C.M. (CCH) 1002 (1985) (citing *Houlette v. Commissioner*, 48 T.C. 350, 1967 WL 947 (1967); *Stolk*, 40 T.C. 345; *Bayley v. Commissioner*, 35 T.C. 288, 1960 WL 1151 (1960)).

The petitioners might evade the application of this general presumption if they were to show that Curtis left the Irvine house temporarily and intending to return. *Green v. Commissioner*, 64 T.C.M (CCH) 369 (1992); *Stolk*, 40 T.C. at 353, 26 C.F.R. § 1.1034–1(c)(3)(i). But in the divorce settlement, Curtis Perry unequivocally relinquished his right to reside, and retained only a financial interest in the property. At that point the Irvine house was no longer his home. *See Stolk*, 40 T.C. at 353 n. 3 ("The term 'residence' is used in contradistinction to property ... held for the production of income.") (citing legislative history).

This case closely resembles *Young*, 49 T.C.M. (CCH) 1002. Petitioner Robert Young moved out of his marital home and into temporary lodgings when he and his wife divorced. In settlement, his former wife and daughter received a 75% interest in the house and an exclusive right of residence. Young retained a 25% interest, and undertook the obligation to pay the mortgage, taxes, insurance and other expenses. Within a year of his divorce, Young moved into the home of his new wife, and sold to his former wife his 25% interest in the house they once shared. The Tax Court denied Young rollover treatment for the gain realized in this transaction on the grounds that Young had abandoned the residence "when the divorce decree granted his former wife and daughter exclusive use of the property." *Id.*

The Perrys seek to avoid this precedent by having us apply another line of authority, which has permitted taxpayers to benefit from section 1034(a) when, even though they have vacated their former residences with no intention of returning, they are prevented from selling their houses within the statutory time limit by forces beyond their control. In *Green*, for instance, a woman was unable to sell her old house when her ex-boyfriend, who was part-owner, blocked the sale and tied the house up in litigation. 64 T.C.M. (CCH) 369. The Tax Court permitted her to avoid recognition of the gain when, several years later, sale finally took place by court order. Likewise, in *Clapham v. Commissioner*, 63 T.C. 505, 1975 WL 3146 (1975), the Tax Court approved the application of section 1034(a) when a couple was prevented from selling their house for lack of a ready market.[2] *See also Stolk*, 40 T.C. at 355 (indicating availability of rollover for houses vacated

---

**2.** We do find the result in *Clapham* somewhat incongruous with its reasoning. It appears from the Tax Court's statement of the case that the Claphams may have simply chosen not to sell their house below a price they considered "reasonable." Mere softness in the market for real estate is, without more, probably not the sort of "external" circumstance that permits a taxpayer to avail himself of section 1034(a), as long as the market for that property has not been destroyed by some extraordinary event. Accordingly, *Clapham* has since been narrowed by subsequent decisions. *See Green*, 64 T.C.M. (CCH) 369. In any event, we need not press the limits of the *Clapham* doctrine here because Curtis Perry agreed in his divorce settlement that his former wife would have the house as her residence, exclusive of him, in the period preceding its sale, and this agreement dictates the result we reach.

after they are destroyed by fire or condemned for public use) (citing report of the Joint Committee Staff, 1951–2 C.B. 436) (predecessor statutory provision).

The Perrys argue that, although Curtis Perry wished to sell the Irvine property at the time of his divorce, he agreed not to do so in the settlement because he knew the family law court would not have permitted him to evict his ex-wife and daughter. This "policy" on the part of the court to provide a home for minor children, the Perrys contend, is an "external" circumstance akin to those found in *Green* or *Clapham.*

■ We find the Perrys' case far closer to *Young* than to *Green.* Curtis Perry agreed to vacate his former residence and to postpone its sale. Meanwhile, he took up residence elsewhere and made his life in the new place. A house which a party to a divorce has agreed shall be the exclusive residence of the other spouse cannot, during the period covered by that agreement, be the "principal residence," under section 1034(a), of the person who has agreed to move out. It is true that not every aspect of a divorce is, strictly speaking, within the taxpayer's control; nevertheless, we agree with the Tax Court in *Young* that "a divorce, while often unpleasant and unwanted, is uniquely personal and is not the type of external, objective circumstance that allows a taxpayer not in possession of a home to be deemed a resident therein for purposes of section 1034(a)." *Young,* 49 T.C.M. (CCH) 1002.

■ Furthermore, one year following the sale of the Irvine house, Curtis and Linda Perry, filing jointly, obtained nonrecognition treatment for Linda's house in La Mirada, where she and Curtis had been living together since 1984. Curtis Perry's divorce does not afford him the right to "reside" in two places at once for the purposes of section 1034(a). A person has no more than one "principal" residence. *Dwyer,* 163 F.2d at 302.

3. Because we agree that the Perrys improperly applied section 1034, we also affirm the assessment of a negligence penalty under I.R.C. § 6553(a). The Perrys do not ·argue that the

Accordingly, we concur in the Tax Court's decision that Curtis Perry ceased to reside in the Irvine house when he and his former wife separated and signed their settlement agreement.[3]

## III

We hold that once a taxpayer leaves his marital home, permanently and with no intention to return, pursuant to a divorce settlement which gives the other spouse exclusive occupancy and which does not mandate that the house immediately be sold, the taxpayer cannot avail himself of the nonrecognition provision in 26 U.S.C. § 1034(a) with respect to that property. The decision of the Tax Court is AFFIRMED.

negligence penalty was incorrect except on the ground, which we have rejected, that they were entitled to nonrecognition of the gain.