T.C. Memo. 1998-219


UNITED STATES TAX COURT


CLIFFORD F. ASHER, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 6570-95.                    Filed June 23, 1998.


<u>Jon R. Vaught</u>, for petitioner.

<u>Elaine Sierra</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


WRIGHT, <u>Judge</u>:  Respondent determined deficiencies of $21,670 and $23,054 in petitioner's income tax and accuracy-related penalties under section 6662(a) of $4,334 and $4,611, for the taxable years 1990 and 1991, respectively.

Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the years in issue. Rule references are to the Tax Court Rules of Practice and Procedure.

The issues to be decided are:

(1) Whether petitioner is required under section 1034 to defer recognition of gain he realized on the sale of a residence in 1990.

(2) Whether petitioner received a constructive dividend from Golden Gate Litho in 1991.

(3) Whether petitioner is liable for the accuracy-related penalty under section 6662(a) for 1990 and 1991.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. Petitioner resided in Oakland, California, when the petition was filed in this case.

In 1980, petitioner formed Golden Gate Litho, a California corporation (the corporation). The corporation is in the lithography and commercial printing business. During 1991, petitioner owned 76 percent of the corporation's stock and his son, Donald Asher, owned 24 percent. During 1992, petitioner owned 71 percent of the corporation's stock and his son owned 29 percent.

The corporation's principal place of business is located in a building on Golf Links Road in Oakland, California (the office building). Petitioner owns the office building and leases it to the corporation. During all relevant periods, petitioner was a full-time, year-round employee of the corporation, and his place of work was in the office building.

On November 13, 1985, petitioner purchased a residence located on Forest Avenue in Castro Valley, California (the Castro Valley house) for $120,666. Petitioner occupied the Castro Valley house on that date and lived there until August 27, 1988. On December 31, 1986, petitioner sold a residence that had been his principal residence (former residence) prior to the purchase of the Castro Valley house.

On his 1986 Federal income tax return, petitioner reported the sale of the former residence on a Form 2119, Sale or Exchange of Principal Residence. On the Form 2119, petitioner reported that he realized gain in the amount of $59,959, based on the $132,356 selling price of the former residence with an adjusted basis of $72,397. Petitioner reported taxable gain of $11,690 (the difference between the $132,356 selling price of the former residence and the $120,666 cost of the Castro Valley house) and deferred gain of $48,269 (the difference in the $59,959 gain realized and the $11,690 taxable gain). Petitioner reported that

his adjusted basis in the Castro Valley house was $72,397 (the $120,666 cost less the $48,269 deferred gain).

On August 27, 1988, petitioner purchased a condominium located in Incline Village, Nevada, for $149,793.[1]  At that time, petitioner moved all of his furniture and personal belongings into the condominium.

On the same day that petitioner purchased the condominium, he leased the Castro Valley house to Robert Whitlock and Patricia Lofton-Whitlock (the Whitlocks).  Under the agreement petitioner leased the house to the Whitlocks for a 1-year term commencing September 1, 1988, subject to automatic month-to-month renewal, and granted the Whitlocks the option to purchase the house.  When the Whitlocks did not exercise their option to purchase the house by the end of the 1-year term, petitioner listed the house for sale.  On April 27, 1990, petitioner sold the Castro Valley house for $169,000, incurring selling expenses of $10,756, and, thus, realizing $158,244 on the sale of the house.

Petitioner reported the sale of the Castro Valley house as the sale of his principal residence on a Form 2119 attached to his 1990 return.  On the Form 2119 petitioner reported an $85,847 gain on the sale ($158,244 amount realized less $72,397 basis of home sold).  He reported that the cost of the new home was

---

[1]The $149,793 purchase price includes the $149,000 contract sales price of the condominium plus $793 of capitalized closing costs paid by petitioner.

$149,793 and that his taxable gain on the sale of the Castro Valley house was $8,451 ($158,244 adjusted sales price of the Castro Valley house less the $149,793 cost of the condominium).

In the notice of deficiency dated February 3, 1995, respondent determined that petitioner realized a capital gain of $77,396 that must be recognized in 1990 on the sale of his Castro Valley house.

The condominium in Incline Village, Nevada, is approximately 200 miles from the corporate office building in Oakland, California.  It took petitioner approximately 4 hours to drive from the condominium to the office building.  From the time petitioner acquired the condominium until July 1993[2], he resided in the condominium on weekends and during vacation periods. During the work week, he stayed in the vicinity of his place of work (the San Francisco Bay area).  When petitioner was in the San Francisco Bay area he usually stayed with his mother or friends who live in the area, but occasionally he stayed in a hotel.

Petitioner has received his personal mail at the office building since he acquired the building in 1980.  Although petitioner was not registered to vote during 1988 through 1991, he had a California driver's license, filed income tax returns

---

[2]In July 1993 petitioner sold the condominium and purchased a house in Incline Village.

with the State of California, and used the corporate business address on his Federal income tax returns.

During 1991, the corporation needed more office space[3] and constructed a loft area in the office building. The cost of constructing the loft was $75,096. The loft area consists of approximately 1,200 square feet and includes offices, a storage area, a lounge area with a kitchen (285 square feet), and a bathroom with a shower (45 square feet). Another bathroom is located in the back of the office building. The new bathroom was constructed so that petitioner and clients would not have to walk through the manufacturing area to the other bathroom. Petitioner uses the lounge area to meet with clients. The kitchen has a sink and microwave but is not equipped with a stove or pots and pans.

After work Donald Asher likes to work out before going home. He requested the shower be installed so that he could shower before going home after working out. Donald Asher lived in the loft for a few weeks following a domestic dispute with his wife until he could find an apartment. He slept on a mattress on the floor in the storage room. Petitioner does not use the shower and has never lived in the loft.

---

[3]Donald Asher had become the production manager and took over petitioner's office space.

On his Federal income tax return for 1990, petitioner reported income from two sole proprietorships (Sungate Travel and Sungate Tours located on Alcosta Boulevard in San Ramon, California), in addition to his wages from the corporation. He reported gross receipts of $1,649,088 from Sungate Travel and $115,982 from Sungate Tours. On his 1991 return, he reported gross receipts of $1,090,975 from Sungate Travel and he reported the sale of Sungate Tours.

During 1993 and 1994, an agent of the Internal Revenue Service conducted an audit of the corporation's returns for the taxable years ending May 31, 1991 and 1992, and petitioner's individual returns for taxable years 1990 and 1991. Petitioner's accountant was present at all meetings with petitioner and the agent. The agent reviewed documents such as invoices and contracts supporting the corporation's depreciation schedule of items related to the construction and furnishings of the loft. The documents showed the purchase of a leather sofa and chair, kitchen cabinets, fixtures for the bathroom, and blinds.

During the course of the audit, the agent visited the office building twice, once in July 1993 and again in July 1994. While walking down the hallway in the loft during the second visit, the agent noticed a mattress with box spring and a cabinet in one of the rooms.

The agent concluded that petitioner lived in the office building because petitioner used the office address on his income tax returns and received most of his mail at the office building and because of the 4-hour drive from the condominium to the office building, the presence of the cabinet and mattress with box spring in a room in the loft during July 1994, and the presence of the kitchen and shower in the loft.

Consistent with the revenue agent's conclusion and adjustment to petitioner's income, respondent determined in the notice of deficiency that petitioner received a constructive dividend as a result of the construction of the loft in 1991.

OPINION

1. Whether the Gain Petitioner Realized on the Sale of the Castro Valley House Is Taxable in the Year of the Sale

Generally, sections 1001 and 61 require a taxpayer to recognize gain realized on the sale of property in the year of the sale. Section 1034, however, requires a taxpayer to defer recognition of gain realized on the sale of the taxpayer's principal residence in certain circumstances. If the taxpayer purchases and uses a new principal residence within the 4-year replacement period, the taxpayer will recognize gain only to the extent that the taxpayer's adjusted sales price of the old residence exceeds the taxpayer's cost of purchasing the new residence. Sec. 1034(a). Thus, if the cost of the new residence equals or exceeds the adjusted sales price of the old residence,

the entire gain will be deferred.  If the cost of the new residence is less than the adjusted sales price of the old residence, gain will be recognized to the extent of the difference.  Sec. 1034-1(a), Income Tax Regs.  The deferral of the gain is accomplished by reducing the basis of the new residence by the amount of gain not recognized on the sale of the old residence.  Sec. 1034(e).

The 4-year replacement period begins 2 years before the date of the sale of the old residence and ends 2 years after such date.  Sec. 1034(a).  If, however, during the 4-year replacement period, the taxpayer purchases more than one residence that is used by him as his principal residence at some time within 2 years after the date of the sale of the old residence, only the last of such residences is treated as the new residence.  Sec. 1034(c)(4).

Petitioner contends that the Castro Valley house was his old principal residence and the condominium was his new principal residence.  Petitioner concludes, that since he purchased and used the condominium as his new principal residence within 2-years prior to the sale of the Castro Valley house, he is required by section 1034(a) to defer recognition of the gain on the sale of the house.

Respondent argues that section 1034(a) does not apply because (1) the Castro Valley house was not petitioner's

principal residence on the date of the sale because he rented the property prior to its sale and (2) the condominium was not petitioner's new principal residence because he lived most of the time in the Oakland area, either at his place of work or at the home of his mother or friends.

Both parties, however, fail to recognize the consequence of applying section 1034(c)(4) to the sale of petitioner's former residence on December 31, 1986. Petitioner purchased and occupied the Castro Valley house on November 13, 1985, and he purchased and occupied the condominium on August 27, 1988. If the condominium was used by petitioner as his principal residence, then the Castro Valley house and the condominium were both purchased and used by petitioner as his principal residence during the 4-year replacement period and were both used by petitioner during the 2-year period after the sale of the former residence. Since the condominium would be the last principal residence to be used by petitioner during the 2-year period after the date of the sale of the former residence, the condominium would constitute the new residence with respect to the sale of the former residence. Sec. 1034(c)(4).

Where a taxpayer purchases and sells a number of principal residences during the statutory period following a section 1034 nonrecognition sale, that statute ignores all of the transactions except for the last purchase occurring within the period. See

Aagaard v. Commissioner, 56 T.C. 191, 204 (1971); Kerns v. Commissioner, T.C. Memo. 1984-22. Thus, if the condominium became petitioner's primary residence on August 27, 1988, under section 1034(c)(4), the Castro Valley house would have ceased to be petitioner's primary residence and would not have been his primary residence when it was sold on April 27, 1990.

If the condominium was petitioner's principal residence, section 1034(a) would not apply to the gain on the sale of the Castro Valley house by virtue of section 1034(c)(4). Nor would section 1034(a) apply to such gain if the condominium was not petitioner's primary residence, because in that event petitioner did not purchase and use a new principal residence within the 4-year replacement period required by section 1034(a). Therefore, in either event, petitioner must recognize the gain realized on the sale of the Castro Valley house in the year of the sale.

The amount of gain petitioner realized on the sale of the Castro Valley house, however, depends upon whether the Castro Valley house or the condominium became petitioner's new principal residence with respect to the sale of petitioner's former residence. If the Castro Valley house was not petitioner's new principal residence for purposes of the deferral of gain on the sale of petitioner's former residence, petitioner's adjusted basis in the Castro Valley house was not reduced by the amount of the deferred gain. Therefore, we must determine whether the

condominium was petitioner's primary residence as of August 27, 1988.

The determinations of whether property (1) is used by a taxpayer as his residence and (2) is used as his principal residence depends upon all the facts and circumstances. Sec. 1.1034-1(c)(3), Income Tax Regs. For purposes of section 1034, property is "used" by taxpayer as his residence if the taxpayer physically occupies or lives in that property. United States v. Sheahan, 323 F.2d 383, 386 (5th Cir. 1963); Bayley v. Commissioner, 35 T.C. 288, 295 (1960). An individual may have more than one residence. Howard v. Commissioner, 16 T.C. 157 (1951), affd. 202 F.2d 28 (9th Cir. 1953). A residence is a taxpayer's "principal residence" if it is his "chief or main" place of residence, considering all relevant facts, including the amount of time the taxpayer spends at one residence as opposed to another. Stolk v. Commissioner, 40 T.C. 345, 351, 356 (1963), affd. per curiam 326 F.2d 760 (2d Cir. 1964).

A residence as distinguished from a domicile does not mean one's permanent place of abode. In Stolk v. Commissioner, supra at 355, we stated: "The elements of residence are the fact of abode and the intention of remaining, and the concept of residence is made up of a combination of acts and intention. Neither bodily presence alone nor intention alone will suffice to create a residence." Residence is something less than domicile.

<u>Friedman v. Commissioner</u>, 37 T.C. 539, 552 (1961). "An individual may have a domicile in one place and a residence in another, and may also have more than one residence." <u>Id.</u> Residence does not mean one's permanent place of abode, where he intends to live all his days or for an indefinite or unlimited time; nor does it mean one's residence for a temporary purpose, with the intention of returning to his former residence when that purpose has been accomplished. <u>Houlette v. Commissioner</u>, 48 T.C. 350, 356 (1967); <u>Stolk v. Commissioner</u>, <u>supra</u> at 353.

When petitioner was in the San Francisco Bay area during the work week, he stayed with his mother or friends or in a hotel. Sleeping at his mother's or friends' homes is not enough to make those locations petitioner's abode, nor did he intend to remain there. His mother or friends could at any time change the locks or otherwise exclude petitioner from the premises. Lacking any actual dominion over the property, petitioner was merely a guest at sufferance, and neither his mother's home nor his friends' homes constitute petitioner's actual place of abode. Generally, property is not "used by the taxpayer as his principal residence" within the meaning of section 1034(a), unless the taxpayer physically occupies and lives in the property. <u>Perry v. Commissioner</u>, 91 F.3d 82, 85 (9th Cir. 1996), affg. T.C. Memo. 1994-247; <u>Houlette v. Commissioner</u>, <u>supra</u>; <u>Stolk v. Commissioner</u>, <u>supra</u>.

Petitioner kept all of his possessions in the condominium and spent most weekends and holidays at the condominium. Unlike the taxpayers in Friedman v. Commissioner, supra, and Stolk v. Commissioner, supra, petitioner did not own or occupy any other dwelling in the San Francisco Bay Area on a regular basis or for periods greater than the time he spent at the condominium. The phrase "used by the taxpayer as his principal residence" means habitual use of the residence. In Perry v. Commissioner, supra at 85, the U.S. Court of Appeals for the Ninth Circuit stated:

> While literal definitions of "home" are elusive, here it is enough * * * that a residence is "one's actual home, in the sense of having no other home, whether [one] intends to reside there permanently or for a definite or indefinite length of time." Dwyer v. Matson, 163 F.2d 299, 302 (10th Cir. 1947).[Alteration made by the Court of Appeals for the Ninth Circuit.]

The condominium was petitioner's actual home; he had no other home. We find that for purposes of section 1034(a) the condominium was petitioner's primary residence as of August 27, 1988.

Since the condominium is the last residence used by petitioner during the 2-year period after the date of the sale of the former residence, the condominium constitutes the new residence with respect to the sale of the former residence. Sec. 1034(c)(4). Since the Castro Valley house was not petitioner's new principal residence for purposes of the deferral of gain on the sale of petitioner's former residence, petitioner's adjusted

basis in the Castro Valley house was not reduced by the amount of the deferred gain.  Therefore, for purposes of computing the gain on the sale of the house, petitioner's basis in the house is its $120,666 cost.  Petitioner realized $158,244 on the sale of the house, and his gain is $37,578 ($158,244 less $120,666).  Since petitioner reported $8,451 of taxable gain on the sale of the house, he must include the additional gain of $29,127 in income for 1990.

2.    Whether Petitioner Received a Constructive Dividend as a
      Result of the Construction of the Loft

Section 61(a) includes in a taxpayer's gross income dividends received by the taxpayer.  Section 316(a) defines a dividend as any distribution of property by a corporation to its shareholders out of earning and profits.  A taxpayer can be charged with disguised or constructive dividend income even though the corporation has not observed the formalities of dividend declaration, has not made a pro rata distribution to the entire class of stockholders, and did not record the distribution as a dividend for bookkeeping purposes and even though neither the corporation nor the shareholder intended a dividend.  See Crosby v. United States, 496 F.2d 1384 (5th Cir. 1974); United States v. Smith, 418 F.2d 589, 593 (5th Cir. 1969); Paramount-Richards Theatres, Inc. v. Commissioner, 153 F.2d 602 (5th Cir. 1946), affg. a Memorandum Opinion of this Court.  Where a corporation has incurred costs to construct, maintain, or

otherwise improve real property owned by a shareholder, such costs may constitute constructive dividends to be recognized by the shareholder as dividend income if the shareholder receives a benefit attributable to such costs without the expectation of repayment.  Magnon v. Commissioner, 73 T.C. 980, 994 (1980); Estate of Clarke v. Commissioner, 54 T.C. 1149, 1161 (1970); Benes v. Commissioner, 42 T.C. 358, 379 (1964), affd. without published opinion 355 F.2d 929 (6th Cir. 1966).

"Not every corporate expenditure incidentally conferring economic benefit on a shareholder is a constructive dividend." Crosby v. United States, supra at 1388.  An indirect or incidental benefit to the shareholder should not by itself be treated as a distribution to him.  Kuper v. Commissioner, 61 T.C. 624 (1974), affd. in part and revd. in part 533 F.2d 152 (5th Cir. 1976).  The crucial test of the existence of a constructive dividend is whether the expenditure was primarily for the benefit of the shareholder.  Loftin & Woodard, Inc. v. United States, 577 F.2d 1206, 1215 (5th Cir. 1978); Sammons v. Commissioner, 472 F.2d 449 (5th Cir. 1972), affg. in part and remanding T.C. Memo 1971-145; Magnon v. Commissioner, supra at 994.  Whether a corporate payment was made primarily for the shareholder's benefit rather than for the corporation's benefit is a question of fact.  Loftin & Woodard, Inc. v. United States, supra.

Respondent contends that the loft was used by petitioner as a residence and, therefore, the corporation's payment for the construction of the loft constitutes a constructive dividend to petitioner. Respondent contends that petitioner lived in the office building because of (1) the use of the office address on petitioner's income tax returns and receipt of mail at the office building; (2) the presence of the cabinet and mattress with box spring in a room in the loft during July 1994; (3) the 4-hour drive from the condominium to the office building; and (4) the presence of the kitchen and shower in the loft.[4]

Petitioner used the office address on his returns and received his mail at the office even when he lived in the Castro Valley house. Furthermore, it is not unusual for a business to have a kitchen or bathroom with a shower. When petitioner was in the San Francisco Bay area he stayed with friends or his mother.

We found petitioner to be credible and his testimony to be candid and forthright. Additionally, petitioner's accountant

---

[4]The agent testified that petitioner said he lived in Incline Village but also on several occasions said he "lived in the business since 1988". Respondent contends that petitioner's statement was an admission that petitioner resided in the loft. Assuming without finding that petitioner made such a statement, we think that the statement is ambiguous. During the years in issue, not only did petitioner work full time as an employee of the corporation, he also was the sole proprietor of two other businesses (Sungate Travel and Sungate Tours) that were located at another location and generated over $1 million in gross receipts each year. Under the circumstances, we do not think that "lived in the business" would necessarily mean that petitioner was residing in the loft.

corroborated much of petitioner's testimony.  We find that petitioner did not reside in the loft.

The loft was constructed in order to provide more office space after Donald Archer became the production manager and to provide an appropriate place for petitioner to meet with the corporation's customers.  Petitioner did not use the loft as a residence.  The loft was constructed and used for valid corporate business purposes.  Therefore, we hold that petitioner did not receive a constructive dividend in 1991 as a result of the corporation's construction of the loft.

3.  <u>Whether Petitioner Is Liable for the Accuracy-related Penalty Under Section 6662(a) for 1990 and 1991.</u>

Respondent determined that petitioner is liable for the accuracy-related penalty under section 6662(a) for 1990 and 1991. Taxpayers are liable for a penalty equal to 20 percent of the part of the underpayment to which section 6662 applies.  Sec. 6662(a).

With respect to the 1990 taxable year, petitioner failed to report part of the gain on the sale of the Castro Valley house. He introduced no evidence disputing the accuracy-related penalty and failed to argue during trial or on brief as to why the penalty should not be applied to the understatement for that year.  Accordingly, we sustain respondent's determination that petitioner is liable for the section 6662(a) accuracy-related penalty for 1990.

For the 1991 taxable year, we have held that petitioner did not receive a constructive dividend. Therefore, petitioner is not liable for the section 6662(a) accuracy-related penalty for 1991.

To reflect the foregoing,

Decision will be entered under Rule 155.