T.C. Summary Opinion 2001-48


UNITED STATES TAX COURT


THEODORE B. BARE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 3271-98S.                Filed April 4, 2001.


<u>Bradley S. Shannon</u>, Amanda Skiles, and Jesse Smith, for
petitioner.

<u>Shirley M. Francis</u>, for respondent.



DEAN, <u>Special Trial Judge</u>:  This case was heard pursuant to
the provisions of section 7463 of the Internal Revenue Code in
effect at the time the petition was filed.  Unless otherwise
indicated, subsequent section references are to the Internal
Revenue Code in effect for the years in issue, and all Rule
references are to the Tax Court of Practice and Procedure.  The

decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.

Respondent determined deficiencies of $378, $896, and $9,570 in petitioner's Federal income taxes for taxable years 1993, 1994, and 1995, respectively. In addition, respondent determined accuracy-related penalties under section 6662(a) of $76 and $1,914 for taxable years 1993 and 1995, respectively.

The issues remaining for decision are: (1) Whether petitioner must recognize gain from the sale of his personal residence in taxable year 1993, and (2) whether petitioner is liable for accuracy-related penalties under section 6662(a) for taxable years 1993 and 1995.[1]

## Background

The stipulation of facts and the accompanying exhibits are incorporated herein by reference. Petitioner resided in Tigard, Oregon, at the time his petition was filed in this case.

Petitioner has been a certified public accountant for 25 years. In March 1989, petitioner and his wife, Sandra K. Bare (now deceased), purchased a residential property located at 1461 N.E. Burns Street, West Linn, Oregon (the Burns Street property), for $80,100.

---

[1] The parties reached agreement on the amount of gain to be recognized on the sale of petitioner's business property, and respondent concedes the sec. 6662(a) accuracy-related penalty for taxable year 1995 insofar as it relates to that issue.

The Burns Street property was petitioner's personal residence from March 1989 to December 10, 1993. On December 10, 1993, petitioner sold the Burns Street property for an adjusted sales price of $127,920. Petitioner realized $9,123 of gain on the sale of the Burns Street property.

From January 1994 through September 1995, petitioner lived on his boat docked at a marina in Portland, Oregon. In late September 1995, petitioner and a friend sailed petitioner's boat to Astoria, Oregon, and docked it there.

In August 1995, Uprite Homes, Inc. (Uprite Homes), petitioner's wholly owned S corporation, completed construction of a residential property located in Washington County in Sherwood, Oregon (the Bowmen Lane property). Petitioner began to sleep at the Bowmen Lane property in October of 1995. The Bowmen Lane property was unfurnished, and petitioner did not keep his personal belongings in the house. He slept at the Bowmen Lane property in a sleeping bag that he stored in his camper during the day. He also showered at the Bowmen Lane property but stored his toiletries in his camper afterwards. He did not cook meals at the house although he did eat in the house some meals purchased from fast food restaurants. Petitioner did not receive mail at the Bowmen Lane property.

Between October 1 and December 6, 1995, the utilities and insurance for the Bowmen Lane property were in the name of Uprite

Homes, and Uprite Homes paid all utilities, insurance, and property taxes for the Bowmen Lane property. Petitioner paid no rent for his use of the property.

On October 9, 1995, petitioner made an offer to purchase a house in Portland, Oregon (the Portland house), and his offer was accepted. Petitioner expected to close on the Portland house before December 10, 1995.

On November 30, 1995, Uprite Homes received an offer on the Bowmen Lane property from William A. Weber, Jr., and Nicole L. Weber (the Webers), for $160,500. The offer was accepted contingent upon the Webers' ability to secure a loan.

On or about November 30, 1995, petitioner learned the seller of the Portland house could not close on the sale of the house by December 10, 1995. On December 6, 1995, Uprite Homes executed a quitclaim deed to transfer the Bowmen Lane property to petitioner for the stated consideration of $130,000. In its general ledger, Uprite Homes recorded the transfer by reducing the corporation's recorded debt to petitioner from $113,004 to zero and by recording a debt from petitioner to Uprite Homes of $16,996. The December 6, 1995, deed from Uprite Homes to petitioner was not filed in the records of Washington County, Oregon.

The Uprite Homes 1995 general ledger reflects, through an increase in petitioner's recorded debt to the corporation, that in December 1995, petitioner assumed liability for $678 for

property tax, interest, and insurance for the Bowmen Lane property for the period between December 6 and December 26, 1995. During this period, all insurance and utilities for the Bowmen Lane property remained in the name of Uprite Homes, and Uprite Homes continued to pay all utilities for the property.

On December 26, 1995, petitioner executed a quitclaim deed to transfer the Bowmen Lane property to Uprite Homes for the stated consideration of $130,000. Uprite Homes recorded the December 26, 1995, transaction with petitioner in its general ledger by reversing petitioner's sales transaction and recorded debt to the corporation and by recording a $112,326 debt from the corporation to petitioner. The December 26, 1995, deed from petitioner to Uprite Homes was not filed in the records of Washington County, Oregon.

During the 20-day period that petitioner purports to have owned the Bowmen Lane property, he continued to store his personal belongings in his camper. He did not do his laundry in the house and used none of its kitchen appliances. He had no telephone service, garbage pickup, newspaper delivery, or television. He knew none of his neighbors.

On December 26, 1995, Uprite Homes executed a statutory warranty deed to transfer title to the Bowmen Lane property to the Webers for the previously agreed consideration of $160,500. The Webers believed that no one had occupied the Bowmen Lane

property before they moved in.  On December 27, 1995, the statutory warranty deed from Uprite Homes to the Webers was recorded in Washington County, and the closing on the Bowmen Lane property occurred.

Petitioner went to Southern Oregon on December 26, 1995, to stay with his parents.  On January 5, 1996, the closing occurred on petitioner's purchase of the Portland house.

## Discussion

Under sections 1001 and 61, taxpayers generally must recognize in the year of sale all gain or loss realized upon the sale or exchange of property.  Section 1034, however, provides an exception which allows taxpayers to defer recognition of gain when sale proceeds are reinvested in a new principal residence.[2] Section 1034(a) specifies that gain must be reinvested in property "purchased and used by the taxpayer as his principal residence" in order for nonrecognition treatment to be available.

Respondent determined that petitioner must report gain from the sale of his personal residence in 1993 because a qualifying replacement residence was not purchased and used within 2 years as required by section 1034.  The 2-year deadline for petitioner to reinvest in a new residence and thereby qualify for gain

---

[2]  Although sec. 1034 was repealed by sec. 312(b) of the Taxpayer Relief Act of 1997, Pub. L. 105-34, 111 Stat. 839, and the rollover provision was replaced by an expanded and revised sec. 121, sec. 1034 was in effect for the year at issue herein.

deferral was December 10, 1995. Respondent's determination resulted in a reduction of petitioner's capital losses in 1993, 1994, and 1995. Petitioner contends that he purchased the Bowmen Lane property and used it as his principal residence within the required timeframe.

We first consider whether petitioner purchased the Bowmen Lane property. The facts and circumstances of petitioner's case reveal that the transaction between him and his wholly owned S corporation was not a bona fide sale. See Scherr v. Commissioner, T.C. Memo. 1993-87.

The "incidence of taxation depends upon the substance of a transaction" rather than its mere form. Commissioner v. Court Holding Co., 324 U.S. 331, 334 (1945). A transaction lacking economic substance may be disregarded for tax purposes. See Knetsch v. United States, 364 U.S. 361, 365-366 (1960); Braddock Land Co. v. Commissioner, 75 T.C. 324 (1980). In the context of a sale transaction, the inquiry is whether the parties have in fact done what they purport to do in the form of their agreement. See Grodt & McKay Realty, Inc. v. Commissioner, 77 T.C. 1221, 1237 (1981).

The term "sale" is given its ordinary meaning for Federal income tax purposes and is generally defined as a transfer of property for money or a promise to pay money. See Commissioner v. Brown, 380 U.S. 563, 570-571 (1965). The determination of

whether a particular transaction constitutes a sale turns on whether the benefits and burdens of ownership have passed from seller to buyer. See Grodt & McKay Realty, Inc. v. Commissioner, supra. This inquiry is factual and is determined from the intention of the parties, as evidenced by the written agreements read in light of the attendant facts and circumstances. See Haggard v. Commissioner, 24 T.C. 1124, 1129 (1955), affd. 241 F.2d 288 (9th Cir. 1956).

Various factors to consider in making a determination as to whether a sale has occurred have been summarized as follows: (1) Whether legal title passes; (2) how the parties treat the transaction; (3) whether equity was acquired in the property; (4) whether the contract creates a present obligation on the seller to execute and deliver a deed and a present obligation on the purchaser to make payments; (5) whether the right of possession is vested in the purchaser; (6) which party pays the property taxes; (7) which party bears the risk of loss or damage to the property; and (8) which party receives the profits from the operation and sale of the property. See Grodt & McKay Realty, Inc. v. Commissioner, supra at 1237-1238. An additional factor to be weighed is the presence or absence of arm's-length dealing. See Falsetti v. Commissioner, 85 T.C. 332, 348 (1985) (citing Estate of Franklin v. Commissioner, 64 T.C. 752 (1975), affd. 544 F.2d 1045 (9th Cir. 1976)).

Upon consideration of these factors in light of the totality of the facts and circumstances surrounding the transaction, we conclude that the conveyance of the Bowmen Lane property was without substance and had no effect for tax purposes.

Petitioner's purported purchase of the Bowmen Lane property did not occur until after Uprite Homes had accepted the Webers' offer to purchase the property, no money was exchanged, and the deed was never recorded.  Petitioner's purported purchase and sale price of $130,000 is almost 20 percent less than the $160,500 Uprite Homes agreed upon and received from the Webers. The insurance and utilities for the property remained in the name of Uprite Homes, and petitioner never moved any of his personal belongings into the home.  Uprite Homes continued to pay the utilities, and the $698 petitioner "paid" the corporation for property tax, interest, and insurance on the Bowmen Lane property was merely a recorded entry in Uprite Homes' general ledger.

As the purported purchaser and as sole shareholder of the purported seller, petitioner was on both sides of the transaction.  The facts surrounding the transaction indicate the parties did not deal at arm's length.  The "sale" was fabricated solely to facilitate petitioner's attempt to defer gain on the sale of the Burns Street property.

Furthermore, the record reflects that petitioner did not use the Bowmen Lane property as his principal residence as required

by section 1034.  Whether or not property is used by a taxpayer as his residence depends upon all the facts and circumstances in each case, including the good faith of the taxpayer.  See sec. 1.1034-1(c)(3)(i), Income Tax Regs.  "The elements of residence are the fact of abode and the intention of remaining, and the concept of residence is made up of a combination of acts and intention.  Neither bodily presence alone nor intention alone will suffice to create a residence."  Stolk v. Commissioner, 40 T.C. 345, 353 (1963), affd. 326 F.2d 760 (2d Cir. 1964); see also Perry v. Commissioner, 91 F.3d 82, 85 (9th Cir. 1996), affg. T.C. Memo. 1994-247.

Petitioner never had any intention of making the Bowmen Lane property his residence.  His limited use of the property is not sufficient to create a residence.  Accordingly, petitioner does not qualify for the nonrecognition provisions of section 1034.

Finally, we address the accuracy-related penalties imposed pursuant to section 6662(a).  Section 6662(a) and (b)(1) imposes a penalty of 20 percent of the portion of an underpayment of tax that is attributable to negligence or disregard of rules or regulations.  "Negligence" includes any failure to make a reasonable attempt to comply with the statute, and "disregard" includes any careless, reckless, or intentional disregard.  Sec. 6662(c).  We have further defined negligence as the failure to exercise the due care that a reasonable and ordinarily prudent

person would employ under the same circumstances. See <u>Neely v. Commissioner</u>, 85 T.C. 934, 947 (1985). A taxpayer is not liable for the penalty if he shows that there was reasonable cause for the underpayment and that he acted in good faith. See sec. 6664(c)(1).

Petitioner bears the burden of proving that the accuracy-related penalties are inapplicable.[3] See Rule 142(a); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933); <u>Bixby v. Commissioner</u>, 58 T.C. 757, 791-792 (1972).

Petitioner is a certified public accountant. His purported purchase and resale of the Bowmen Lane property clearly were undertaken solely with the intent to meet the nonrecognition provisions of section 1034. Petitioner knew or should have known that a transaction devoid of any substance does not meet the requirements of section 1034 and the regulations promulgated thereunder.

Accordingly, we hold that petitioner is liable for accuracy-related penalties pursuant to section 6662(a) for 1993 and 1995 with respect to the understatements of tax attributable

---

[3] Sec. 7491(c), applicable to court proceedings arising in connection with examinations commencing after July 22, 1998, requires the Secretary to carry the burden of production with respect to penalties. See Internal Revenue Service Restructuring & Reform Act of 1998, Pub. L. 105-206, sec. 3001, 112 Stat. 685, 726. The notice of deficiency at issue herein, however, was dated December 12, 1997.

to his failure to recognize gain from the sale of his residence and the corresponding adjustments to his capital losses.

Reviewed and adopted as the report of the Small Tax Case Division.

<u>Decision will be entered under Rule 155</u>.